# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | |
|---|---|
| CUP O' DIRT, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BADLANDS AIRTIME, LLC, BUSINESS SIXTEEN, LLC, CHARLES C. BRENNAN, MARY BRENNAN, and REAL PRESENCE RADIO, INC., A NORTH DAKOTA NON-PROFIT CORPORATION,<br><br>Defendants. | 4:19-CV-04031-KES<br><br><br>ORDER GRANTING MOTION TO AMEND, GRANTING MARY BRENNAN'S MOTION TO DISMISS, DENYING BADLANDS AIRTIME, LLC, BUSINESS SIXTEEN, LLC, and CHARLES C. BRENNAN'S MOTION TO DISMISS, DENYING MOTION TO UNSEAL, AND DENYING REQUEST FOR ORAL ARGUMENT |

Plaintiff, Cup O' Dirt, LLC, (COD) moves for leave to amend its complaint. Docket 37. Defendants Badlands Airtime, LLC, Business Sixteen, LLC, and Charles Brennan (Brennan defendants) oppose the motion and contend that the motion to amend should be denied because of futility. Docket 45. The Brennan defendants originally moved to dismiss COD's initial complaint. Docket 11. Defendant Real Presence Radio, Inc., joins in the Brennan defendants' opposition. Docket 47. Defendant Mary Brennan separately moves to dismiss the claims against her for lack of personal jurisdiction. Docket 8. COD also moves to unseal a variety of documents filed with this court. Docket 26. For the reasons stated below, the court grants COD's motion to amend, grants Mary Brennan's motion to dismiss, denies the Brennan defendants' motions to dismiss, denies COD's motion to unseal, and denies all parties' requests for oral argument.

## BACKGROUND

The parties to this matter have a long and complex history of litigation. The facts as alleged in the proposed amended complaint[1] are as follows:

COD is a limited liability company organized under the laws of South Dakota. Docket 37-1 ¶ 5. Charles Brennan, a resident of the state of Nevada, is the sole owner of Business Sixteen, LLC, a parent company to multiple limited liability companies including Badlands Airtime, LLC. *Id.* ¶¶ 6-7, 15. Business Sixteen is believed to be the sole member of Badlands Airtime. *Id.* ¶ 8. Thus, both Business Sixteen and Badlands Airtime are citizens of Nevada. *Id.* ¶¶ 6-8. Charles Brennan is also a controlling owner of DLC Empire, LLC. *Id.* ¶ 18.

In February of 2015, Badlands Airtime and COD entered into an Asset Purchase Agreement (APA) to acquire radio station assets from COD. *Id.* ¶¶ 1, 20. After Charles Brennan and Badlands Airtime defaulted on the purchase agreement, COD sued Badlands Airtime in South Dakota state court to enforce the APA. *Id.* ¶ 23. In May of 2018, a state court jury ruled in favor of COD. *Id.* ¶ 2. On July 9, 2018, a money judgment was entered in favor of COD, in the amount of $300,801.11, plus an award of attorneys' fees and expenses in the

---

[1] Some facts not alleged in the complaint are found in *Cup O' Dirt v. Badlands Airtime, LLC, et. al*, State of South Dakota Second Judicial Circuit Case No. 15-CIV-1949, which COD discusses in its proposed amended complaint. *Cup O' Dirt v. Badlands Airtime, LLC, et. al*, is a matter of public record embraced by the complaint, and thus this court may consider it on a motion to dismiss. *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) ("Our interpretation of the phrase face of the complaint includes public records and materials embraced by the complaint . . . ." (internal quotation and alterations omitted)). Other documents, however, provided by the parties are not relevant to the claims before this court nor embraced by the pleadings.

amount of $454,554.99. *Id.* ¶¶ 2, 24-25. COD alleges $528,519.94, plus post-judgment interests remains unpaid by Badlands Airtime. *Id.* ¶¶ 2, 26-27.

COD alleges both Badlands Airtime and Business Sixteen were insolvent from inception. *Id.* ¶¶ 30-31. While the entities were insolvent, COD alleges a number of transfers were made for no value or substantially less than reasonably equivalent value with the intent to delay, hinder, or defraud COD in its attempt to satisfy their state court judgment in violation of SDCL § 54-8A. *Id.* ¶¶ 53-54. First, COD alleges that during the state court litigation, in April of 2016, Wade Sears and the Sears Family Trust wire transferred $3 million dollars to Badlands Airtime. *Id.* ¶ 32. Four days later, the money was transferred out of Badlands Airtime's bank account and wired to DLC Empire—an entity also controlled by Charles Brennan. *Id.* ¶¶ 18, 33. No consideration was received by the Sears Family Trust for this transfer until two months after the transfer, when a promissory note granted a security interest in "substantially all" of Badlands Airtime's assets to the Sears Family Trust for repayment of the $3 million dollars. *Id.* ¶¶ 34-35. This security interest was then perfected. *Id.* COD alleges that the transfer to DLC Empire is not listed as a corresponding asset of Badlands Airtime because Badlands Airtime was merely a pass-through entity. *Id.* ¶¶ 36-37.

COD alleges this transfer was a fraudulent transfer under SDCL §§ 54-8 and 54-8A. *Id.* ¶ 55. Because Badlands Airtime did not receive value or consideration essential to the enforceability of the promissory note and security agreement, and because the transfer was fraudulently made to an insider when

Badlands Airtime was insolvent, COD alleges that the Sears Family Trust does not have a valid secured claim against the fraudulently transferred property. *Id.* ¶¶ 37-38. Thus, COD alleges it is entitled to recover from the Brennan defendants the amount of such fraudulent transfer to satisfy its state court judgment. *Id.* ¶ 57.

Second, during the pendency of the state court litigation, COD also alleges that Badlands Airtime—while insolvent—entered into a contract with Real Presence Radio. *Id.* ¶ 39. The contract concerned the purchase of radio assets. *Id.* The contract contemplated partial payment at closing in June of 2018 and a promissory note in favor of Badlands Airtime for the remainder, under which two cash installment payments were due on the first and second anniversary "of the date on which the transaction closed" in 2019 and 2020. *Id.* ¶¶ 41-44. COD alleges the amount paid by Real Presence Radio in consideration for these radio assets, including an FCC license that was valued at $1.5 million, was substantially less than the asset's reasonably equivalent value. *Id.* ¶¶ 40, 45.

After judgment was entered in the state court action, COD alleges that Charles Brennan immediately "contacted Real Presence Radio, disclosed the judgment, and sought to accelerate payment of the remaining funds owed to Badlands Airtime[.]" *Id.* ¶ 48. In exchange for an accelerated payment, Charles Brennan offered to accept less than what was owed under the terms of the parties' contract. *Id.* ¶ 49. Real Presence Radio agreed, and funds were then directly wired from Real Presence Radio to the Sears Family Trust. *Id.* ¶ 50.

COD again alleges the Brennan defendants fraudulently transferred these funds to thwart and obstruct COD's attempt to enforce collection of the amount owed under its state court judgment. *Id.* ¶¶ 3, 53.

COD alleges that the original 2016 transfer from Badlands Airtime to DLC Empire, the note and security agreement executed by Badlands Airtime in favor of the Sears Family Trust, the Real Presence Radio transaction, and the accelerated payments to the Sears Family Trust from Real Presence Radio were all transfers made while Badlands Airtime was insolvent, were transfers made for no value or substantially less than reasonable equivalent value, and were transfers made either with the intent to eventually delay, hinder, or defraud COD in obtaining the state court judgment or because Badlands Airtime intended to incur debt beyond the entity's ability to pay as it became due. *Id.* ¶¶ 52-55. Thus, COD alleges the defendants engaged in fraudulent transfers in violation of state law. *Id.*

Similarly, COD also alleges Badlands Airtime was the instrument or alter ego of Charles Brennan, the sole member of its parent company, Business Sixteen, and that Brennan has abused the corporate form by engaging in the fraudulent transfers discussed above. *Id.* ¶¶ 62, 65. Because Charles Brennan has abused the corporate form by engaging in the outlined fraud and misconduct, COD seeks to pierce the corporate veil and enforce its state court money judgment against him personally. *Id.* ¶ 65. COD requests damages in the amount of the judgment in the state court action, together with post-judgment interest, and for attorneys' fees and expenses. *Id.* at 15-16.

**DISCUSSION**

## I.    Motion to Amend the Complaint

First, COD moves to amend its complaint to make the following changes: (1) particularize its allegations into two counts: fraudulent transfers by the named defendants and entity abuses by Charles Brennan and (2) add Wade Sears and the Sears Family Trust as defendants. Docket 37 at 1. COD also appears to remove a count for declaratory relief. *See* Docket 37-1 at 11-12. The Brennan defendants oppose the motion and argue that the proposed amendments are futile because the amended complaint fails to state a claim upon which relief can be granted and is barred by res judicata. Docket 45. Real Presence Radio joins the Brennan defendants' opposition. Docket 47.

### A.    Legal Standard

Rule 15 of the Federal Rules of Civil Procedure states that leave to amend a pleading should be given "freely" and "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has held:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001). "The Eighth Circuit Court of Appeals takes a 'liberal viewpoint towards leave to amend' and leave 'should normally be granted absent good reason for a denial.' " *Libertarian Party of S.D. v. Krebs*,

312 F.R.D. 523, 525 (D.S.D. 2016) (quoting *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000)). "Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous." *Becker v. Univ. of Neb.*, 191 F.3d 904, 908 (8th Cir. 1999). Because the "purpose of pleading is to facilitate a proper decision on the merits," the Supreme Court rejects an approach under the Federal Rules that "pleading is a game of skill in which one misstep by counsel may be decisive to the outcome[.]" *Foman*, 371 U.S. at 181-82 (internal quotations omitted).

" '[I]t is common practice for a party to seek leave to amend in response to a motion to dismiss.' " *Dakota Provisions, LLC v. Hillshire Brands Co.*, 226 F. Supp. 3d 945, 951 (D.S.D. 2016) (quoting *Ireland v. Anderson*, 2014 WL 3732014, at *2 (D.N.D. July 25, 2014)). The Eighth Circuit Court of Appeals has stated that a motion to amend a complaint may moot a pending motion to dismiss. *See Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) (finding defendant's motion to dismiss the original complaint moot after plaintiff moved to amend complaint); *see also Janis v. Nelson*, 2009 WL 4505933, at *1 (D.S.D. Nov. 24, 2009) (holding that original motion to dismiss was rendered moot after the filing of an amended complaint).

The Brennan defendants oppose COD's motion to amend, arguing that amending the complaint would be futile. Docket 45. In evaluating a motion to amend for futility, an amendment is futile if "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (internal

quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this analysis, the court assumes all facts asserted "in the complaint to be true and construes all reasonable inferences from those facts" in a light most favorable to the non-moving party. *Rochling v. Dep't of Veterans Affairs*, 725 F.3d 927, 930 (8th Cir. 2013) (internal quotation omitted). The court may also "consider those materials that are necessarily embraced by the pleadings." *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 998 (8th Cir. 2016) (internal quotation omitted). "Those materials include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.' " *Id.* (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)).

### B.    Count I: Fraudulent Transfers

Count I of the proposed amended complaint alleges that a number of transfers were made by defendants for no value, or substantially less than reasonably equivalent value, while Badlands Airtime and Business Sixteen were insolvent or rendered insolvent, and were made either for an improper

purpose (with the intent to delay, hinder, and defraud), or were made for less than reasonably equivalent value when the debtor reasonably believed it would incur debts beyond its ability to pay in violation of SDCL §§ 54-8 and 54-8A. Docket 37-1 ¶¶ 53, 55. COD also claims that the defendants, other than Real Presence Radio, "engaged in fraudulent misconduct undertaken with willful, wanton, and malicious intent," in violation of SDCL § 54-8-22. *Id.* ¶ 60.

Because this case arises under diversity jurisdiction, this court must apply state substantive law and federal procedural law. *See Great Plains Tr. Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007). Federal procedural law requires allegations of fraud or mistake to be pleaded with particularity. Fed. R. Civ. P. 9(b). Specifically, this district has found that Rule 9(b) applies to intentional fraudulent transfer claims. *See Larson Mfg. Co. of S.D., Inc. v. Conn. Greenstar, Inc.*, 929 F. Supp. 2d 924, 934-36 (D.S.D. 2013 (outlining pleading requirements for claims brought under the Uniform Fraudulent Transfer Act). To satisfy Rule 9(b), the party alleging fraud "must typically identify the who, what, where, when and how of the alleged fraud." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation omitted).

The parties do not appear to dispute that South Dakota law should govern COD's substantive fraudulent transfers claim. "South Dakota has adopted the Uniform Fraudulent Transfer Act." *Nielsen v. Logs Unlimited, Inc.*, 839 N.W.2d 378, 381 (S.D. 2013) (citation omitted). Codified at SDCL § 54-8A, the purpose of the legislation "is to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." *Glimcher*

*Supermall Venture, LLC v. Coleman Co.*, 739 N.W.2d 815, 820 (S.D. 2007) (citation omitted). A fraudulent transfer is a transfer made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" SDCL § 54-8A-4(a)(1). A transfer may be deemed fraudulent as to a creditor even if the creditor's claim arose after the transfer was made if, for example, the debtor had reason to believe that he would incur debts "beyond his ability to pay as they became due." *See* SDCL § 54-8-A-4(a)(2)(ii). Certain "badges" of a fraudulent transfer are identified in the statute, including whether the alleged fraudulent transfer occurred "shortly before or shortly after a substantial debt was incurred;" whether the transfer was of "substantially all of the debtor's assets;" whether "the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor;" whether the transfer "was disclosed or concealed;" and whether the debtor had been sued before the transfer was made. SDCL § 54-8A-4(b). A transfer may also be fraudulent if the transfer was made for less than reasonably equivalent value at a time when the debtor was insolvent, or if the transfer was made to an insider for an antecedent debt when the debtor was insolvent. *See* SDCL § 54-8A-5.

Here, the amended complaint plausibly states a claim for fraudulent transfers under South Dakota law. The essence of the amended complaint is that the named defendants used fraudulent transfers to help Badlands Airtime as a debtor deplete its property and assets to prejudice COD as an unsecured judgment creditor. COD alleges that $528,519.94 plus post-judgment interest remains unpaid from the state court judgment. Docket 37-1 ¶ 2. Allegations

that Badlands Airtime transferred substantially all of its assets to insiders while the entity was insolvent with reason to believe Badlands Airtime could incur a judgment debt are facts that state a plausible claim for relief under SDCL § 54-8A. If Badlands Airtime did not receive "reasonably equivalent value in exchange for the transfer[s]" and the transfers were made "with the actual intent to hinder, delay, or defraud" COD as a creditor, the transfers could also be determined to be fraudulent by a jury or court. *See* SDCL § 54-8A-4(a). The amended complaint also alleges various "badges" of fraudulent transfers, including that some of the transfers were made immediately after the judgment debt occurred; that the transfers were of substantially all of Badlands Airtime's assets; that one transfer was to a lienor who transferred the assets to an insider of Badlands Airtime; that the transfers were concealed; and that Badlands Airtime was sued before all the transfers were made. *See* SDCL § 54-8A-4(b). Thus, the facts in the amended complaint are pleaded with particularity and plausibly state a claim of fraudulent transfers under South Dakota law.

The Brennan defendants first contest COD's allegations that the transfers were made for less than the reasonably equivalent value of the transferred property. Docket 45 at 8-10. Similar to this argument, in *Nielsen v. Logs Unlimited, Inc.*, Logs Unlimited argued on appeal that the circuit court erred in its fair market valuation of the fraudulently transferred assets. *See* 839 N.W.2d at 382-83. But "whether the transfer is for reasonably equivalent value in every case is largely a question of fact, as to which considerable

11

latitude must be allowed to the trier of facts." *Prairie Lakes Health Care Sys., Inc.*, 583 N.W.2d 410, 412 (S.D. 1998) (internal quotation omitted). And the valuation of assets is a question of fact. *See Endres v. Endres*, 532 N.W.2d 65, 68 (S.D. 1995). The Brennan defendants' argument disregards the posture of this case at the pleading stage and fails to recognize or apply the relevant pleading standard. By insisting that COD prove their case at the motion to dismiss stage, the Brennan defendants seek to subject the amended complaint to more stringent review than what is prescribed by the Federal Rules. At this stage, the amended complaint's factual allegations as to the fair market value of the transferred property, accepted as true, states a claim to relief that is plausible on its face and not futile.

The Brennan defendants next argue that there can be no fraudulent transfer of $3 million dollars between the Sears Family Trust and the Brennan entities because the transfer of an encumbered asset is not the transfer of an "asset" under South Dakota law. Docket 45 at 9. This argument again mirrors an argument made in *Logs Unlimited, Inc.*, where the entity defendant argued that an "asset" within the meaning of the Uniform Fraudulent Transfer Act was not fraudulently transferred because an "asset" cannot include the disposal of " '[p]roperty to the extent it is encumbered by a valid lien[.]' " *See* 839 N.W.2d at 384 (quoting SDCL § 54-8A-1(2)(i)). The Brennan defendants argue that the Sears Family Trust properly perfected its security interest in the 2016 promissory note, thus making it property encumbered by a valid lien. Docket 45 at 9. But SDCL § 54-8-1 states that "[e]very transfer of property . . . taken,

with intent to delay or defraud any creditor . . . is void against all creditors of the debtor[.]" COD alleges that the transfer is a void security interest because it itself is a fraudulent transfer. *See* Docket 37-1 ¶ 37. Again, at this initial stage, accepting the facts of the amended complaint as true, COD has sufficiently alleged that the transfer of $3 million dollars to the Sears Family Trust was fraudulent and void, making it an invalid lien and a transfer of property or "assets" within the meaning of SDCL § 54-8A-1(2)(i). Thus, the amended complaint plausibly states a claim under South Dakota law.

### C.    Count I: Res Judicata

Finally, the Brennan defendants argue that COD's fraudulent transfer claim is barred by res judicata because it is the same essential fraud claim that was brought by COD in the state court proceedings. Docket 45 at 4-8. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "Res judicata seeks to promote judicial efficiency by preventing repetitive litigation over the same dispute." *People ex rel. L.S.*, 721 N.W.2d 83, 90 (S.D. 2006) (citing *Wells v. Wells*, 698 N.W.2d 504, 508 (S.D. 2005)). " 'The law of the forum that rendered the first judgment controls the res judicata analysis.' " *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (quoting *Laase v. Cty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011)). For res judicata to apply in South Dakota, four elements must be met:

(1) a final judgment on the merits in an earlier action; (2) the question decided in the former action is the same as the one decided in the present action; (3) the parties are the same; and (4) there was a full and fair opportunity to litigate the issues in the prior proceeding.

*People ex rel. L.S.*, 721 N.W.2d at 89-90 (citation omitted).

The Brennan defendants argue that the allegations of fraud before this court were dismissed in state court on the merits and with prejudice. Docket 45 at 4-8. COD disagrees, arguing that the fraud alleged in the amended complaint here concerns fraudulent transfers made during and after final judgment in the state court proceedings, whereas the fraud alleged in state court focused on fraudulent misrepresentations made in 2015. Docket 51 at 7-10. Sometimes referred to as "issue preclusion," a judgment can foreclose "relitigation of a matter that has been litigated and decided." *Am. Family Ins. Group v. Robnik*, 787 N.W.2d 768, 774 (S.D. 2010) (internal quotation omitted). To determine whether issues are the same, "[t]he test is a query into whether the wrong sought to be redressed is the same in both actions." *Glover v. Krambeck*, 727 N.W.2d 801, 805 (S.D. 2007) (internal quotation omitted).

Here, the court finds that the wrong sought to be redressed is not the same in both actions. The fraud claims presented in state court focused on allegations of fraud from the contemplation and execution of the APA between the parties in 2015. *See* Docket 12-1 at 22-28. One fraud claim, intentional misrepresentation under SDCL § 20-10-2, was dismissed in state court at the summary judgment stage. *Id.* at 31. The state court found that there was "insufficient evidence to support a claim" that fraudulent assertions made in a

June 15, 2015 letter "were made with malice." *Id.* at 22. COD's other fraud claim, which focused on "actual fraud in relation to contracts" and a theory that Badlands Airtime executed the 2015 APA with no intention to complete the purchase, proceeded to trial on the merits. *Id.* at 28. Unlike those issues, the fraud asserted before this court concerns fraudulent transfers made by the defendants with the intent to hinder COD as a judgment creditor. COD does not assert fraud or misrepresentation under SDCL § 20-10-2, as was alleged in the state court proceedings, but instead pleads allegations of fraudulent transfers under SDCL § 54-8A. There are distinct differences between allegations of fraud in terms of the elements, facts that must be proven, relief that is sought, and applicable law. Thus, issue preclusion does not preclude the fraudulent transfer claim in COD's amended complaint.

The Brennan defendants also argue that the claim is barred by res judicata because the alleged fraudulent transfers were discoverable during the state court proceeding. Docket 45 at 5-8. COD disagrees, arguing that the fraudulent transfer claim had not accrued until COD was a judgment creditor and the Brennan defendants engaged in post-judgment conduct. Docket 51 at 8. Referred to as "claim preclusion," a judgment can also foreclose "litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit . . . ." *Robnik*, 787 N.W.2d at 774 (internal quotation omitted). To invoke such preclusive effect, there must have been "a full and fair opportunity to litigate the issues in the prior proceeding." *People ex rel. L.S.*, 721 N.W.2d at 90. "[C]laim preclusion does not apply to

claims that did not arise until after the first suit was filed." *Baker Group, L.C. v. Burlington N. & Santa Fe R.R. Co.*, 228 F.3d 883, 886 (8th Cir. 2000).

Here, the court finds that COD's fraudulent transfer claim could not have been advanced in the state court proceedings. The question of whether the 2016 transfers provided in discovery were fraudulent could not have been litigated in the underlying state court action because the transfers would not have affected COD as a judgment creditor until after COD obtained its state court judgment. The state court case was tried to a verdict prior to the defendants consummating their fraudulent transfers, and the alleged harm to COD did not occur until after the judgment. A claim cannot be advanced in an earlier suit if essential elements and operative facts establishing the claim do not occur until after the finality of the previous litigation. The Brennan defendants' preclusive theory would require a plaintiff to foresee—prior to the resolution of the state court proceedings—that judgment would be entered in its favor and the defendant would refuse to satisfy the judgment. Additionally, the 2016 transfers discoverable in the state court proceedings were not relevant and had no relation to the claims before the state court concerning the negotiation of the 2015 APA and alleged fraudulent misrepresentations under SDCL § 20-10-2. Thus, claim preclusion is also inapplicable.

After construing the facts and reasonable inferences from those facts as true and in a light most favorable to COD, the court finds that COD has pleaded sufficient facts to survive a motion to dismiss on its fraudulent transfer

claim. COD's fraudulent transfer claim and the amendments in the amended complaint are not futile or barred by res judicata.

### D. Count II: Entity Abuses by Charles Brennan

Count II of the proposed amended complaint alleges that "Badlands Airtime LLC was an instrument or alter ego of [Charles] Brennan, the sole member of its parent company, Business Sixteen LLC" and that Brennan abused the corporate form by taking "action on behalf of Badlands Airtime LLC while it was insolvent that was directly contrary to its interests." Docket 37-1 ¶¶ 62-64. Based on these entity abuses, COD alleges that Badlands Airtime's corporate veil should be pierced to reach Business Sixteen, and that its corporate veil should also be pierced to reach Charles Brennan to satisfy the state court judgment assessed against Badlands Airtime.

"State law is viewed to determine whether and how to pierce the corporate veil." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). Each claim to pierce the corporate veil is "[s]*ui generis* and must be decided in accordance with its own underlying facts." *Mobridge Cmty. Indus., Inc. v. Toure, Ltd.*, 273 N.W.2d 128, 132 (S.D. 1978) (internal quotation omitted). "[A]s a general rule, a corporation is to be considered a legal entity separate and distinct from its shareholders, officers and directors unless and until there is sufficient reason to the contrary." *Brevet Int'l, Inc. v. Great Plains Luggage Co.*, 604 N.W.2d 268, 273 (S.D. 2000). A limited liability company is not a corporation, but it affords its members limited liability protection like a corporation. *See Smith v. Rustic Home Builders, LLC*, 826 N.W.2d 357, 359

(S.D. 2013). "The concept of limited liability is considered one of the central purposes for choosing the corporate form, because it permits shareholders to limit their personal liability to the extent of their investment." *Brevet*, 604 N.W.2d at 274. "[B]ut when the notion of a legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, then sufficient reason will exist to pierce the corporate veil." *Kan. Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 112 (S.D. 1994).

Under an instrumentality theory, South Dakota law provides that "[a] parent corporation is liable for the acts of its subsidiary when (1) the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former; and (2) adherence to the rule of corporate separateness would produce injustices and inequities." *Glanzer v. St. Joseph Indian Sch.*, 438 N.W.2d 204, 207 (S.D. 1989) (citations omitted). Under an alter ego theory, South Dakota law also provides that an "entity may be disregarded where the corporation is the mere alter ego or business conduit of an individual." *Hyde v. Hyde*, 99 N.W.2d 788, 792 (S.D. 1959). This analysis turns on (1) whether a unity of interest and ownership exists and (2) whether adherence to the fiction of separate existences would promote injustice, fraud, or lead to evasion of legal obligations. *See Kan. Gas & Elec. Co.*, 521 N.W.2d at 112. Four factors may be considered under the unity of interest prong: (a) undercapitalization; (b) absence of corporate records; (c) failure to observe corporate formalities; and (d) payment by the corporation of individual obligations. *See id.* at 112-13.

The South Dakota Supreme Court considers several factors to determine if piercing the corporate veil was justified, such as: (1) fraudulent misrepresentation by corporate officers or directors; (2) undercapitalization; (3) failure to observe corporate formalities; (4) absence of corporate records; (5) payment by the corporation of individual obligations; and (6) use of the entity to promote fraud, injustice, or illegality. *Id.* at 112 n.6. "[A] court should pierce the corporate veil only upon the strongest evidence of these factors." *Id.* at 113 n.9. While there exists a presumption against piercing the corporate veil, a plaintiff should be given the opportunity to test its claim on the merits if the underlying facts or circumstances are a proper subject for relief. *See Foman*, 371 U.S. at 182.

Here, the amended complaint plausibly states a claim for entity abuses and to pierce the corporate veil under South Dakota law. COD's amended complaint provides specific facts supporting a reasonable inference that neither Badlands Airtime or Business Sixteen observed the legal requirements of corporate law and that Charles Brennan engaged in entity abuses. Similar to the allegations that survived dismissal in *Burke v. Ability Ins. Co.*, COD alleges facts that Charles Brennan moved money to avoid creditors because Badlands Airtime was " 'so organized and controlled and its affairs [were] so conducted that it is, in fact, a mere instrumentality or adjunct of' " Business Sixteen and Charles Brennan. 926 F. Supp. 2d 1056, 1062-63 (D.S.D. 2013) (quoting *Epps*, 327 F.3d at 649). COD alleges the defendant entities were grossly undercapitalized and insolvent since inception, and that Charles Brennan

exercised complete control over the operations of both Business Sixteen and Badlands Airtime. Docket 37-1 ¶¶ 15, 30-31, 62-63. COD alleges both a unity of interest and ownership such that the separate personalities of the entities and its officer were non-existent. These allegations suggest that Charles Brennan and Business Sixteen "exercised control of the subsidiary to such a degree" as to give the outward appearance that Badlands Airtime is as the alter ego or mere instrumentality of Charles Brennan. *See Burke*, 926 F. Supp. 2d at 1065.

COD has also alleged facts that the entities were used to promote fraud, injustice, or illegality, and that retaining the rule of corporate separateness would produce injustices. For example, COD alleges that Charles Brennan used Badlands Airtime as a pass-through for funds provided by the Sears Family Trust and redirected to DLC Empire. Docket 37-1 ¶ 37. The amended complaint also alleges Charles Brennan immediately sought to accelerate payment on the Real Presence Radio transaction for less than what was owed under the parties' agreement to avoid COD's judgment. *Id.* ¶¶ 48-49, 53. Siphoning assets to frustrate a creditor is the type of unjust abuse of the corporate entity that warrants equitable relief. *See Kan. Gas & Elec. Co.,* 521 N.W.2d at 112 (asking whether "adherence to the fiction of separate corporate existence [would] sanction fraud, promote injustice or inequitable consequences or lead to an evasion of legal obligations?"). Thus, viewing the evidence in the light most favorable to COD as the nonmoving party, the court

finds COD has met its initial burden and established a prima facie case to pierce the corporate veil based on an instrumentality or alter ego theory.

The Brennan defendants argue that the entities in question were not undercapitalized and as such COD cannot pierce the corporate veil. Docket 45 at 12. But undercapitalization is measured at the time that the entity was formed. *See J-R Grain Co. v. FAC, Inc.*, 627 F.2d 129, 135 (8th Cir. 1980) (citation omitted). And questions concerning insolvency and undercapitalization are not normally reached until the summary judgment stage, if then. *See Baatz v. Arrow Bar*, 452 N.W.2d 138, 142 (S.D. 1990) (noting that questions related to undercapitalization "are not normally ready" even at summary judgment). In the amended complaint, COD alleges that both Business Sixteen and Badlands Airtime were undercapitalized at the time of formation. Docket 37-1 ¶¶ 30-31, 64. At this stage, COD has sufficiently alleged that the entities were undercapitalized to proceed with its claim.

The Brennan defendants also argue Charles Brennan cannot be personally liable because any personal liability on Brennan's behalf was negotiated out of the original APA agreement between the parties. Docket 45 at 11. But here, a lack of personal guaranty in the 2015 APA has no bearing on COD's current claims, which center on Charles Brennan's alleged entity abuses subsequent to COD's state court judgment. *See* Docket 37-1 ¶¶ 39-51. Thus, any negotiating of liability as to the 2015 APA does not bar COD's attempt to pierce the corporate veil for alleged entity abuses committed after the state court judgment and unrelated to the parties' contract negotiations. Again, at

this initial stage, COD has sufficiently pleaded facts that may warrant piercing the corporate veil.

### E.      Count II: Res Judicata

Finally, in their original motion to dismiss, the Brennan defendants argue that COD's entity abuse claim is barred by res judicata because the state court proceedings dismissed COD's previous attempt to pierce the corporate veil. Docket 13 at 13-18. COD disagrees, arguing that its state court claim to pierce the corporate veil was dismissed as moot and without prejudice, and concerned different facts than the facts alleged before this court. Docket 36 at 7-10. The Brennan defendants did not brief the issue in opposition to COD's amended complaint. *See* Docket 45.

Like the fraudulent transfers discussed above, res judicata does not bar COD's current entity abuse allegations. The attempt to pierce the corporate veil in the state court action was not determined on the merits and was dismissed as moot without prejudice. *See* Docket 12-1 at 16. The state court held that "the effort to pierce Badlands' corporate veil and impose personal contractual liability upon Brennan is moot." *Id.* In South Dakota, "an order to dismiss without prejudice does not constitute res judicata" because the language without prejudice "imports contemplation of further proceedings." *Hayes v. Rosenbaum Signs & Outdoor Advert., Inc.*, 853 N.W.2d 878, 882 (S.D. 2014). Thus, the state court's judgment was not a judgment on the merits.

Also, as previously discussed, the fraudulent occurrences alleged in the amended complaint that give rise to a piercing the corporate veil theory are

disparate from the allegations that were brought in state court. Here, a subsequent proceeding to enforce a judgment against the Brennan defendants based on new allegations to support piercing the corporate veil of the judgment debtors have elements of proof and facts that materially vary from the allegations of fraud in the state court proceedings to pierce the corporate veil. Neither party has submitted case law that supports the proposition that a plaintiff may not seek to pierce the corporate veil in a subsequent proceeding focused on post-judgment discovery or testimony. Instead, persuasive authority provides that res judicata does not bar a judgment creditor's subsequent claim to pierce the corporate veil when a judgment debtor engages in fraudulent transfers to hinder the judgment creditor. *See, e.g.*, *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 873 F.2d 109, 110 (6th Cir. 1989) (affirming award of damages from piercing of the corporate veil based on an entity engaging in fraudulent transfers to strip assets of a judgment debtor).

Finally, as previously noted, the Brennan defendants' position would require a plaintiff to foresee—prior to the resolution of its initial lawsuit—that a defendant would refuse to satisfy a judgment and attempt to pierce the corporate veil prematurely. Res judicata is motivated by concerns for judicial economy and efficiency, and the Brennan defendants' position would force a plaintiff to join parties or claims in a case where such a cause of action is not yet ripe or appropriate. *See People ex rel. L.S.*, 721 N.W.2d at 90 (noting that res judicata seeks to promote judicial efficiency). Thus, res judicata does not bar COD's entity abuse claim.

After construing the facts and reasonable inferences from those facts as true and in a light most favorable to COD, the court finds that COD has pleaded sufficient facts to survive a motion to dismiss on its entity abuse claim. COD's claims in its amended complaint are not futile or barred by res judicata. Thus, COD's motion to amend (Docket 37) is granted.

## II. Motion to Dismiss—Mary Brennan

### A. Legal Standard

A party may move to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The court must view the facts in a light most favorable to the party opposing the motion. *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977). To defeat a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of making a prima facie showing that jurisdiction exists. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011). The court may consider not only the pleadings but also affidavits, exhibits, or other evidence attached in support or opposition. *Id.* at 592 (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). "While the plaintiff[] bear[s] the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence[.]" *Epps*, 327 F.3d at 647 (citing *Dakota Indus., Inc., v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

### B. Discussion

Mary Brennan moves to dismiss the claims against her for lack of personal jurisdiction. Docket 8 at 1. She argues that as a nonresident of the

state of South Dakota she has not had contacts with the state sufficient to establish personal jurisdiction. Docket 10 at 6. COD opposes the motion, arguing that Mary Brennan has purposefully availed herself of conducting activities within the forum that render her subject to specific personal jurisdiction in South Dakota. Docket 27 at 2-3.

Federal courts may assume personal jurisdiction over out-of-state defendants in a diversity case " 'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.' " *K-V Pharm. Co.*, 648 F.3d at 592 (quoting *Dever*, 380 F.3d at 1073). Because South Dakota's long-arm statute confers jurisdiction to the fullest extent allowed by the Due Process Clause, the evaluation requires only a determination of whether the assertion of personal jurisdiction comports with due process under the Fourteenth Amendment. *See* SDCL § 15-7-2(14); *see also Larson Mfg. Co. of S.D.*, 929 F. Supp. 2d at 926 (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). The Supreme Court has established that a court may only exercise personal jurisdiction over an out-of-state defendant in cases where the defendant has sufficient "minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (alteration in original) (internal quotations omitted).

The sufficiency of a defendant's contacts are analyzed under five factors: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the

interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). "The first three factors are primary factors, and the remaining two factors are secondary factors." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). When judging minimum contacts, a court should focus on " 'the relationship among the defendant, the forum, and the litigation.' " *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977)). An assertion of personal jurisdiction over a defendant in a particular forum falls into two categories: general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014).

General jurisdiction permits a court to hear "any and all" claims against a party in a particular forum. *Goodyear*, 564 U.S. at 919. General jurisdiction allows personal jurisdiction over defendants where their contacts with the forum state are not necessarily related to the issue at stake in the lawsuit. *Arden*, 614 F.3d at 794. Mary Brennan's contacts with South Dakota do not rise to a level that is sufficient to confer general personal jurisdiction over her. Thus, if personal jurisdiction exists over Mary Brennan in South Dakota, it must be based on specific jurisdiction related to this cause of action.

Specific jurisdiction permits a court to assert authority over an out-of-state defendant when the cause of action arises from or relates to the defendant's actions within that forum state. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1091 (8th Cir. 2008)). Courts may assert specific

jurisdiction when "the defendant's conduct and connection with the forum State are such that [he or she] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 477 (8th Cir. 2012). The defendant may not be haled into a forum based on " 'random, fortuitous, or attenuated' contacts," or contacts arising from the unilateral actions of a third party. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The defendant's intentional conduct must form the contacts to the forum; the plaintiff cannot be the only link between the two. *Id.* at 285-86.

Here, COD has failed to allege such contacts. Mary Brennan has served as a director for the Brennan Rock & Roll Academy. Docket 9 ¶ 14. COD has not alleged that this non-profit engaged in fraudulent transfers or misconduct. Instead, the bulk of COD's allegations concern fraudulent transfers between Badlands Airtime and Business Sixteen. *See* Docket 37-1. Mary Brennan has not owned and does not own any interest in Badlands Airtime or Business Sixteen. *See* Docket 9 ¶ 9. COD fails to plead any factual allegations that Mary Brennan was a party to any of the alleged fraudulent transfers, abused the corporate form, or that Mary Brennan engaged in any unlawful activity in South Dakota. Mary Brennan's name does not appear anywhere in the amended complaint except for the fact that she is the wife of Charles Brennan and files a joint tax return with him. Docket 37-1 ¶ 9. Any allegation that Mary Brennan received a tax deduction benefit from the sale of radio assets has been

27

removed from COD's amended complaint. *Compare* Docket 1 ¶ 55 *with* Docket 37-1. The only allegation that could be construed to concern Mary Brennan is that the defendants are "insiders" as to Badlands Airtime. Docket 37 ¶ 56. But "[m]ere conclusory statements devoid of a factual foundation do not suffice." *Dever*, 380 F.3d at 1073 (internal quotation omitted). COD fails to allege what actions by Mary Brennan, as an "insider" to Badlands Airtime, are suit-related.

In its briefs, COD rests its jurisdictional argument on the fact that Mary Brennan played a key role in Badlands' attempt to avoid its obligations to COD and was responsible for the production of many documents in the state court action. Docket 27 at 3. COD argues that there is personal jurisdiction based on the fact that Mary Brennan attended the four-day state court jury trial and attended two meetings in Sioux Falls, South Dakota, in October of 2014 for the purpose of negotiating the underlying business relationship between the parties. *Id.*; *see also In re Guardianship and Conservatorship of Miles*, 660 N.W.2d 233, 242 (S.D. 2003) (holding that participation in negotiations and litigation, such as testifying as a witness, can be sufficient contacts to support a court's exercise of personal jurisdiction). But COD did not allege these facts in its amended complaint, and has failed to allege a connection between Mary Brennan's participation in negotiations or the state court litigation and the allegations in the amended complaint. No suit-related conduct or connection with the forum state has been alleged "such that [Mary Brennan] should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp.*, 444 U.S. at 297. No factual allegations have been made that connect

Mary Brennan to the allegations of fraudulent transfers or entity abuses. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state." *Walden*, 571 U.S. at 284. COD has failed to allege suit-related conduct by Mary Brennan to form the necessary connection to this state.

Based on the pleadings, the amended complaint fails to provide factual allegations by which Mary Brennan purposefully availed herself "of the privilege of conducting activities within [South Dakota], thus invoking the benefits and protections of its laws." *Dever*, 380 F.3d at 1073. COD fails to plead sufficient suit-related contacts with South Dakota to support general or specific personal jurisdiction. Thus, Mary Brennan's motion to dismiss (Docket 8) is granted.

## III.    Motion to Unseal

COD moves to unseal previously sealed documents filed by the Brennan defendants (Docket 18) and to file a variety of documents unsealed. Docket 26 at 1. COD argues that the documents are all historical, that the subject of the documents is repeatedly referred to in the motions and pleadings of the parties, and that the defendants are no longer engaged in business, so no trade secrets are jeopardized by public disclosure. *Id.* at 2. The Brennan defendants oppose the motion, arguing that a state protective order still in effect bars public filing of the confidential documents. Docket 33 at 4-6.

To protect the disclosure of financial and confidential information, the state court parties entered into a protective order dated November 17, 2015. Docket 26 at 2. The order notes that "[a]ll confidential documents . . . filed with

the Court or Clerk of Courts shall be sealed." Docket 26-1 at 2. It also states that "[u]nless and until this Court enters an order, if any, changing the designation of the documents . . . it shall be protected by" the protective order. *Id.* at 6. Finally, the order provides that "[t]his Order shall continue to apply after this action is ended or until otherwise ordered by this Court." *Id.*

Comity between state and federal courts mandate full faith and credit of a state court's order. *See* 28 U.S.C. § 1738 (stating that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States"); *see also D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (noting that "a United States District Court has no authority to review" state court decisions in judicial proceedings).

> There seems to be little doubt that a protective order issued by a court, either state or federal, which on its face survives the underlying litigation, continues to have full force and effect on the parties subject to it even after the final resolution of the underlying case, and the issuing court retains jurisdiction to modify or revoke it.

*Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499 (D. Md. Feb. 18, 2000); *see also Bitco Gen. Ins. Corp. v. Heartland Midwest, LLC*, 2015 WL 12806573, at *2 (W.D. Mo. Oct. 2, 2015) (district court concluding "that in the unique circumstances of this case, where a state court protective order is already in place and the documents were produced as confidential subject to that protective order, this Court should not disturb the state court's orders"); *Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 501 (S.D. Ohio 2002) (noting that if the parties were free to file confidential documents upon

dismissal of a case, "protective orders would cease to fulfill their intended purpose which is to encourage full disclosure of all relevant information.")

Here, COD and the Brennan defendants have both filed sealed affidavits with a variety of attached exhibits. *See* Dockets 18, 35. These documents were confidentially produced between the parties subject to the protective order. The state court protective order provides that "[t]his Order shall continue to apply after this action is ended or until otherwise ordered by this Court." Docket 26-1 at 6. COD has failed to demonstrate that the state court protective order is no longer operative or controlling. This court will not overrule or vacate a standing state court protective order. If COD seeks to have the documents designated as public, COD can move the state court for such relief rather than this court. The state protective order specifically states that nothing in the order "shall prevent a party or nonparty from seeking further provisions regarding confidentiality as may become necessary." *Id.*

Apart from the documents, however, the parties have also filed extensive pleadings, motions, and briefs that discuss the subject of these confidential documents. *See* Dockets 1, 11 to 13, 34. Specifically, the Brennan defendants have filed public briefs that refer to information from the sealed documents. *See, e.g.*, Docket 13 at 5 (noting that Badlands Airtime produced balance sheets in September of 2017 that reflected the existence of a $3 million-dollar loan to Sears Family Trust). The Brennan defendants also publicly filed information concerning the sale of its radio assets to Real Presence Radio and the details of the purchase agreement. *See id.* at 7. That information has also

31

been filed by the FCC—a public agency—and is now a matter of public record. *See* Docket 50. Based on these public filings, it is unclear what information the Brennan defendants deem to remain subject to the state court protective order. This court will not seal COD's pleadings, motions, or briefs that reference the same information that was already publicly filed by the Brennan defendants.

Thus, documents filed under seal (Docket 18) will remain filed under seal subject to the standing state court protective order. The sealed affidavit and attached exhibits hand-delivered to the Clerk of Courts on May 14, 2019 (Docket 35) will be treated similarly and filed under seal consistent with the state court protective order. If COD seeks to have these documents treated as public, COD can move the state court for such relief rather than this court. All other documents hand-delivered to the Clerk of Courts by COD (Dockets 36 to 38) will be treated like the Brennan defendant's publicly filed pleadings, briefs, and motions and will be filed publicly. A future motion may be made by either party under Local Rule 7.1A to request redactions from already publicly filed documents. *See* D.S.D. Civ. LR 7.1A. COD's motion to unseal (Docket 26) is denied.

## IV. Motion for Oral Argument

Finally, the Brennan defendants and Mary Brennan request oral argument. Dockets 20, 21. COD joins in the request for oral argument. Docket 29. Under the District of South Dakota's Local Rules, the court *may* order oral argument on a motion. *See* D.S.D. Civ. LR 7.1 (emphasis added). The court

finds oral argument unnecessary to resolve the pending motions. Thus, plaintiff's and defendants' requests for oral argument are denied.

## CONCLUSION

COD's amendments to the complaint are not futile and survive a motion to dismiss. Mary Brennan's alleged contacts with the forum are not suit-related and do not allow for this court to exercise personal jurisdiction. This court will not unseal documents currently within the bounds of a state protection order. The court finds oral argument unnecessary to resolve the motions. Thus, it is

ORDERED that COD's motion to amend the complaint and add defendants (Docket 37) is granted.

IT IS FURTHER ORDERED that the Brennan defendants' motion to dismiss (Docket 11) and Real Presence Radio's motions for joinder (Dockets 19, 47) are denied as moot.

IT IS FURTHER ORDERED that Mary Brennan's motion to dismiss for lack of personal jurisdiction (Docket 8) is granted.

IT IS FURTHER ORDERED that COD's motion to unseal (Docket 26) is denied.

IT IS FURTHER ORDERED that the Brennan defendants' and Mary Brennan's requests for oral argument (Dockets 20, 21) and COD's joinder in request for oral argument (Docket 29) are denied.

Dated January 29, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE