UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CUP O' DIRT LLC,<br><br>    Plaintiff,<br><br>  vs.<br><br>BADLANDS AIRTIME, LLC; BUSINESS SIXTEEN, LLC; CHARLES C. BRENNAN; REAL PRESENCE RADIO, INC., a North Dakota non-profit corporation; WADE SEARS; SEARS FAMILY TRUST,<br><br>    Defendants. | 4:19-CV-04031-KES<br><br><br><br>ORDER |

   Defendants, Badlands Airtime, LLC, Business Sixteen, LLC, and Charles

C. Brennan (the Brennan defendants), move for judgment on the pleadings and

to strike plaintiff's jury demand. Dockets 61, 62, 63, 64. Plaintiff, Cup O' Dirt

LLC (COD), opposes these motions. Docket 69. COD moves to amend the

Amended Complaint (Docket 53), and the Brennan defendants oppose the

amendments based upon delay, prejudice, and futility. Dockets 100, 104. COD

and the Brennan defendants move for entry of a protective order and to compel

discovery. Dockets 74, 76, 83, 86. For the following reasons, the court grants

in part and denies in part the motion to amend the complaint, denies the

motions for judgment on the pleadings and motion to strike jury demand,

grants in part COD's motion for protective order, and grants in part and denies in part the parties' motions to compel discovery.

**BACKGROUND**

This court stated the factual background of this case as alleged in the Amended Complaint in its order dated January 29, 2020. Docket 52 at 2-5. To the extent that the proposed Second Amended Complaint includes additional or different allegations, the court recites those here:

As of April 13, 2016, the Sears Family Trust and Wade Sears as trustee (collectively referred to as Sears), made loans as an unsecured creditor to Business Sixteen amounting to about $5,000,000. Docket 100-1 ¶ 31. On or about April 13, 2016, and while the state court action between COD and Airtime was pending, Brennan devised and implemented a scheme to defraud COD with Sears' agreement and participation. *Id.* ¶¶ 2, 6, 10, 32. This scheme was intended to grant Sears a security interest in all assets of Airtime for purported consideration of a $3,000,000 loan made by Sears to Airtime. *Id.* ¶ 33. The loan itself was fraudulent and illusory. *Id.* Also as part of this scheme, Brennan caused Business Sixteen to wire $3,000,000 on or about April 14, 2016, as a return to Sears of a portion of the $5,000,000 in loans Sears had previously made to Business Sixteen. *Id.* ¶ 34. Sears caused $3,000,000 to be wired to Airtime, on or about April 15, 2016, in furtherance of the scheme. *Id.* ¶ 35.

Concerning the alleged fraudulent Real Presence Radio (RPR) transaction, Brennan acknowledged that the amount to be paid by RPR in

consideration of Airtime's radio station assets was substantially less than its reasonably equivalent value. *Id.* ¶ 48. Additional consideration for the transfer of assets to RPR included an acknowledgment by RPR that Airtime had made a charitable donation to RPR of the Federal Communications Commission license, which had a fair market value of at least $600,000. *Id.* ¶ 49.

In July 2020, Badlands Motor Speedway, LLC, received approximately $5,000,000 for the sale of its assets. *Id.* ¶ 55. That $5,000,000 accrued to Business Sixteen as the parent entity of Badlands Motor Speedway. *Id.* Business Sixteen then diverted the proceeds of that sale, and used other income and assets, for purposes other than paying the judgment owed to COD by Airtime. *Id.* ¶ 57(f)-(g). Both the insolvency of Airtime and Business Sixteen and the claims of COD were matters of public knowledge known to all defendants. *Id.* ¶ 58.

COD alleges that the acts of the defendants violate SDCL § 20-9-1, which states that every person is responsible for injury to the person, property, or rights of another caused by his willful acts. *Id.* ¶ 63. Willful acts of the defendants, except RPR, constitute a prima facie tort in violation of SDCL § 20-9-1 and common law fraud, and COD has been damaged by this conduct. *Id.* ¶¶ 64-65. All defendants, except RPR, have also engaged in fraudulent misconduct committed with willful, wanton, and malicious intent, which is a felony under SDCL § 54-8-22. *Id.* ¶ 66. And the concerted action among Brennan, Business Sixteen, and others, including DLC Empire, LLC and those yet to be determined, constitutes a civil conspiracy to defraud COD as a

3

creditor of Airtime. *Id.* ¶ 68. Thus, each conspiring defendant is jointly and severally liable to COD in an amount sufficient to satisfy the amounts due. *Id.* ¶ 69.

COD also alleges a series of entity abuses on the part of Brennan and Business Sixteen. *Id.* ¶¶ 70-74. Brennan is the sole owner of Business Sixteen, which owns all membership interest in Airtime, and both Brennan and Business Sixteen provided funding to Airtime. *Id.* ¶ 72. When Airtime was formed, it was undercapitalized and remained insolvent. *Id.* ¶ 73. While Airtime was insolvent, Brennan acted on behalf of Airtime and Business Sixteen in a manner contrary to Airtime's interests. *Id.* Airtime was an instrument or alter ego of Brennan. *Id.* ¶ 71. Because Brennan and Business Sixteen abused the corporate and entity form, and Brennan engaged in fraud and misconduct, COD should be allowed to pierce the corporate veil and enforce its state court judgment against Business Sixteen and Brennan personally. *Id.* ¶ 74.

## DISCUSSION

### I. Motion to Amend Amended Complaint

COD moves to amend the Amended Complaint for the following purposes:

> (i) to include facts about events and circumstances occurring in July 2020; (ii) to include facts contained in documents first produced on July 22, 2020; and (iii) to further particularize the facts and legal basis for its claims, as suggested in the Conclusion to its prior Memorandum dated April 28, 2020.

Docket 101 at 1. Defendants oppose the motion and argue that the amendments are untimely, prejudicial, and futile. Docket 104 at 2.

4

## A. Legal Standard

Federal Rule of Civil Procedure 15 permits both amendments and supplements to pleadings. Fed. R. Civ. P. 15(a), (d). Supplemental pleadings "are intended to cover matters occurring *after* the original complaint is filed." *United States ex rel Kinney v. Stoltz,* 327 F.3d 671, 673 n.4 (8th Cir. 2003) (emphasis added). "An amended pleading is designed to include matters occurring *before* the filing of the bill but either overlooked or not known at the time." *United States v. Voracheck,* 563 F.2d 884, 886 (8th Cir. 1977) (emphasis added) (quotations and citations omitted). Here, the proposed Second Amended Complaint includes some matters that occurred before and some that occurred after the complaint was filed. There is little distinction between a supplement to a pleading and an amendment to a pleading because the standard applicable to both is essentially the same. *Smith v. Brown*, No. 16-CV-04014-LLP, 2018 WL 1440328, at *17 (D.S.D. Mar. 22, 2018) (citing *Carl Zeiss Meditec, Inc. v. Xoft*, Inc., 2011 WL 1326053, at *1 (D. Del. Apr. 5, 2011)). The Brennan defendants do not object to the addition of supplemental material found in paragraphs 31 through 34 of the proposed Second Amended Complaint, although they "disagree with the factual or legal positions articulated[.]" Docket 104 at 1-2. Thus, the court evaluates the remaining amendments under Rule 15(a) and grants the motion to amend as to the supplementary material in paragraphs 31 through 34.

COD's motion to amend its complaint "implicate[s] both Rule 15(a) and Rule 16(b)." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir.

2008). "Rule 15(a) governs the pretrial amendment of pleadings and states that where an amendment is not sought 'as a matter of course'—as defined by the Rule—'a party may amend its pleading only with the opposing party's written consent or the court's leave.' " *Id.* (quoting Fed. R. Civ. P. 15(a)(2)). "The Eighth Circuit Court of Appeals takes a 'liberal viewpoint towards leave to amend' and leave 'should normally be granted absent good reason for a denial.' " *Libertarian Party of S.D. v. Krebs*, 312 F.R.D. 523, 525 (D.S.D. 2016) (quoting *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000)). "A district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.' " *Sherman*, 532 F.3d at 715 (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).

Rule 16(b) requires that scheduling orders "be modified *only for good cause* and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). The Eighth Circuit has held that "in cases in which the deadline to amend pleadings has past [sic]," then the "the primacy of Rule 16(b) over Rule 15(a)" establishes that the "good cause" standard applies. *Sherman*, 532 F.3d at 715-16 (citing *Fin. Holding Corp. v. Garnac Grain Co.,* 127 F.R.D. 165, 165–66 (W.D. Mo.1989)).

### B. Good Cause

#### 1. Diligence

The principal measurement of good cause is "the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006) (*overruled on other grounds by Avichail ex rel. T.A. v. St. John's Mercy Health Sys.*, 686 F.3d 548 (8th Cir. 2012)). In *Sherman*, the Eighth Circuit found the defendant failed to establish good cause to amend its answer to include an affirmative defense for a number of reasons: (1) the motion to amend was filed over seventeen months after the scheduling deadline for amending pleadings; (2) defendant admitted awareness of the defense eight months prior to moving for the amendment; (3) defendant did not apply the defense until the summary judgment stage; and (4) "no change in the law, no newly discovered facts, or any other circumstance made the [affirmative] defense more viable after the scheduling deadline for amending pleadings." *Sherman*, 532 F.3d at 717-18.

In *Barstad v. Murray County*, the court ruled that the plaintiffs did not have good cause to amend the complaint when they were almost two months past the deadline, but had known about the claim they sought to add for twenty-one months. *Barstad v. Murray Cnty.*, 420 F.3d 880, 883 (8th Cir. 2005). And in *Hartis v. Chicago Title Insurance Co.*, the court found that the plaintiffs were not diligent when they waited to amend their complaint until two years after the scheduling order deadline. *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948-49 (8th Cir. 2012). There, the court found that plaintiff's actions

7

amounted to deliberate, tactical decisions made to avoid the possibility of the court denying class certification. *Id.*

Here, COD moved to amend the Amended Complaint on July 23, 2020. Docket 100. This was less than three months after the scheduling order's deadline to amend pleadings, and it was almost three months before the close of discovery and more than three months before the deadline to file dispositive motions. *See* Docket 60. When COD filed a timely response to the Brennan defendants' motions for judgment on the pleadings and motion to strike, COD acknowledged to the court on April 28, 2020, that it may seek to amend the complaint. Docket 69 at 22. And even though it acknowledged some of the amendments in late April, other amendments appear to result from events or discovery that occurred between May and late July when COD moved to amend.

Although COD may have been somewhat dilatory as to some of its proposed amendments, the timing of the motion to amend and the timing of the moving party's awareness of facts leading to the amendments is distinguishable from cases where the court has not found good cause. In *Sherman*, the motion to amend came eight months after the defendant was aware of the defense, and seventeen months after the deadline. *Sherman*, 532 F.3d at 717-18. In *Barstad*, plaintiffs were aware of the claim for twenty-one months before they moved to amend the complaint two months past the deadline. *Barstad*, 420 F.3d at 883. In *Lillibridge v. Nautilus Insurance Co.*, this court denied defendant's motion to amend its answer and withdraw a defense

8

when it was made twelve months after the scheduling order deadline. *Lillibridge v. Nautilus Ins. Co.*, No. 10-4105-KES, 2013 WL 870439, at *6 (D.S.D. March 7, 2013). And in *Pucket v. Hot Springs School District No. 23-2*, this court refused defendant's motion to amend its pleadings when the motion was not made until "over three years past the court's deadline." *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 589-90 (D.S.D. 2006).

Here, COD's delay was relatively brief. Unlike in *Sherman* and *Barstad*, nothing in the record, nor any material cited by the Brennan defendants, indicates a long period of delay between awareness of the need to amend and the motion to amend. The Brennan defendants provide no support for the notion that COD deliberately delayed making the motion to amend or chose to delay as a tactical matter as the plaintiffs did in *Hartis. Hartis*, 694 F.3d at 948-49. Thus, the court finds the COD was diligent "in attempting to meet the order's requirements." *See Hawkins*, 464 F.3d at 822.

### 2. Prejudice

A secondary measure of good cause is "prejudice to the nonmovant resulting from modification of the scheduling order[.]" *Sherman*, 532 F.3d at 717 (holding undue prejudice should only be explored if the movant has been found diligent). "The burden of proving prejudice lies with the party opposing the motion." *Lillibridge*, 2013 WL 870439, at *6 (citing *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)).

In *Pucket*, defendants moved to raise third-party complaints three years after the deadlines to amend pleadings and following the deadline to conclude

9

discovery and file dispositive motions. *Pucket*, 239 F.R.D. at 590. At that point, "there [were] three pending motions for summary judgment[,]" and the "third-party defendants would want to engage in [further] discovery[.]" *Id.* The court found that allowing the late amendments would further delay the case and "prejudice plaintiffs." *Id.* And in *Lillibridge*, this court found that the plaintiff would be prejudiced if the court permitted defendants to withdraw a defense two years after it was first pleaded and a month before the discovery deadline. *Lillibridge*, 2013 WL 870439, at *6. In both cases, the court considered the time already spent on discovery by the non-moving party when determining prejudice. *See id.; Pucket*, 239 F.R.D. at 590.

Here, little to no discovery has occurred between COD and the Brennan defendants. In fact, as the court discusses in section III of this order, entry of a protective order should reignite discovery after it seemingly came to a halt following the parties' initial disclosures. Docket 105 at 3. Under the court's scheduling order, the deadlines for discovery and dispositive motions expired in November 2020. Docket 60. This order's resolution of the pending motions will require entry of an amended scheduling order, including new deadlines for discovery and dispositive motions. Thus, a delay in the case and extension of deadlines would not be solely attributable to an amended complaint.

The Brennan defendants point to *Pucket* for the proposition that "when the motion to amend is made when dispositive motions are pending, prejudice to the non-moving party is likely." Docket 104 at 7. But here, the dispositive motions were filed before the deadline to amend the pleadings. And discovery

10

between the Brennan defendants and COD apparently never really commenced due largely to the parties' dispute over the level of confidentiality in a protective order. Thus, the timing of pending motions and discovery in *Pucket* is distinguishable from this case, and the mere presence of pending dispositive motions does not establish unfair prejudice here.

The Brennan defendants argue that they would be prejudiced by the expense of preparing motions for judgment on the pleadings and a motion to strike the jury demand that may now be moot if the court grants the motion to amend. Docket 104 at 7. The Brennan defendants also argue that granting the motion to amend would further delay this litigation. *Id.* But that argument confuses "undue delay, bad faith, or dilatory motive" with "good cause" to amend the scheduling order and thus "facilitate a proper decision on the merits." *See Foman v. Davis*, 371 U.S. 178, 182 (1962). While granting the motion to amend may delay a resolution of this case, the Brennan defendants have failed to establish *unfair* prejudice. Thus, COD has established good cause to amend the scheduling order.

### C. Futility

The Brennan defendants argue that COD's proposed amendments are futile. Docket 104. An amendment is futile if "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (internal quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is

11

plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the [pleaded] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this analysis, the court assumes all facts asserted "in the complaint to be true and construes all reasonable inferences from those facts" in a light most favorable to the non-moving party. *Rochling v. Dep't of Veterans Affs.*, 725 F.3d 927, 930 (8th Cir. 2013) (internal quotation omitted). The court may also "consider those materials that are necessarily embraced by the pleadings." *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 998 (8th Cir. 2016) (internal quotation omitted). "Those materials include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.' " *Id.* (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)).

Because this case arises under diversity jurisdiction, this court must apply state substantive law and federal procedural law. *Great Plains Tr. Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007).

### 1. Second Cause of Action: Fraud and Prima Facie Tort

Plaintiff moves to amend the Amended Complaint to include prima facie tort, common law fraud, and a violation of SDCL § 54-8-22 as causes of action. Docket 100-1 at 11-12.

### a. Prima Facie Tort

COD alleges that the facts as pleaded establish a "prima facie tort." The term "prima facie tort" does not merely refer to the prima facie elements of a tort; it is its own cause of action. *See, e.g.*, *Reed v. Rolla 31 Pub. Sch. Dist.*, 374 F. Supp. 2d 787, 812 (E.D. Mo. 2005) (stating the elements of a prima facie tort under Missouri law); *Keckhafer v. Prudential Ins. Co. of Am.*, 2002 WL 31185866, at *9 (D. Minn. Oct. 1, 2002) (acknowledging the prima facie tort cause of action, but concluding it is not recognized in Minnesota). There is widespread disagreement among states about the nature, scope, and elements of a prima facie tort. *See Kruse v. Repp*, --- F. Supp. 3d ---, 2020 WL 1317479, at *30 (S.D. Iowa Mar. 20, 2020) (describing disparate notions of and standards for recognizing a prima facie tort in jurisdictions across the country). Simply stated, a prima facie tort recognizes a cause of action for general tortious interference where the conduct does not neatly fit within the contours of a recognized tort cause of action. *Id.*

As the Brennan defendants aptly note, some jurisdictions specifically bar the use of a prima facie tort claim if it is merely a "backstop" or "back-up plan" used to "evade stringent requirements of other established doctrines of law." Docket 72 at 3; *Franlin D. Azar Assocs., P.C. v. Egan*, 787 Fed. Appx. 528, 532 (10th Cir. 2019); *see also Santos v. Barber*, 2017 WL 6409152, *7 (W.D.N.Y. Dec. 15, 2017). Other jurisdictions recognize a prima facie tort only as a back-up plan when there are no other avenues of relief. *See, e.g., Marshall v. Fenstermacher*, 388 F. Supp. 2d 536, 558-59 (E.D. Pa. 2005) (recognizing

prima facie tort "in some circumstances lest a plaintiff be left without recourse at all") (citing *Taylor v. Metzger*, 706 A.2d 685, 701 (N.J. 1998)).

COD argues, and some courts agree, that the prima facie tort comes from the Restatement (Second) of Torts § 870. *See, e.g.*, *Id.* at 558; *Keckhafer*, 2002 WL 31185866, at *9; *Kruse*, 2020 WL 1317479, at *29. Section 870 of the Restatement (Second) of Torts states:

> One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.

§ 870 (Am. L. Inst. 1979). COD then argues that § 870 is codified at SDCL § 20-9-1. Docket 69 at 12. Section 20-9-1 states "Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence." The South Dakota Supreme Court has not recognized a cause of action under the Restatement § 870 nor has it indicated that SDCL § 20-9-1 is a codification of § 870. But the South Dakota Supreme Court has described § 20-9-1 as "a simple codification of the common law of negligence" that provides "the right of injured persons to recover from wrongdoers who fail to exercise ordinary care." *Millea v. Erickson*, 849 N.W.2d 272, 276 (S.D. 2014). Absent recognition by the South Dakota Supreme Court, and without a clear link between SDCL § 20-9-1 and the Restatement § 870, it is unlikely that a prima facie tort would be recognized under South Dakota law.

COD's broad assertion that the South Dakota Supreme Court "relie[s] on the Restatement (Second) in defining the contours of tort liability under South Dakota common law" is misplaced. Docket 69 at 12. The South Dakota Supreme Court has explicitly adopted or relied on *some* sections of the Restatement. *See, e.g.*, *Miessner v. All Dakota Ins. Assocs., Inc.*, 515 N.W.2d 198, 204 (S.D. 1994) (adopting Restatement (Second) of Torts § 682); *Gregory's, Inc. v. Haan*, 545 N.W.2d 488, 493 (S.D. 1996) (relying on Restatement (Second) of Torts § 623A). But the court has also declined to recognize a cause of action found in the Restatement when there are other remedies to redress a wrong. *Matter of Certification of Question of Law From United States Dist. Court, Dist. of S. Dakota, S. Div.*, 931 N.W.2d 510, 518 (S.D. 2019). Thus, recognition of a cause of action in the Restatement is not enough to reliably predict its adoption in South Dakota, especially where other remedies exist.

In *Kruse v. Repp*, the Southern District of Iowa, "exercising respectful caution," recognized a prima facie tort cause of action. *Kruse*, 2020 WL 1317479, at *31. There, plaintiffs obtained a $2.5 million personal injury judgment against a reckless driver in an earlier lawsuit. *Id.* at *2. Then, plaintiffs brought suit against individuals who allegedly provided assistance to the reckless driver to help him shield his assets through unlawful means to avoid satisfying the judgment. *Id.* Three different rationale supported the court's recognition of the prima facie tort claim. First, Iowa's intentional tort law was shaped significantly by the Restatement (Second) of Torts. *Id.* at *29. Second, recognition of the prima facie tort is a natural outgrowth of the

15

common law of intentional tortious interference. *Id.* at *31. Third, the court concluded that no other adequate remedy existed, because the equitable remedies under the Iowa Uniform Fraudulent Transfer Act did not reach the defendants and their conduct. *Id.*

Here, the South Dakota Supreme Court's reliance on the Restatement (Second) of Torts seems more selective as opposed to the broad embrace described by the court in *Kruse*. The South Dakota Supreme Court has not said that SDCL § 20-9-1 is a codification of § 870, nor has it ever recognized a prima facie cause of action in the state's statutes or common law. And as addressed below, other remedies exist. Thus, the court declines to recognize a prima facie tort under South Dakota law, and the motion to amend is denied as to a prima facie tort claim.

### b. Fraud

The Second Cause of Action also seeks relief under common law fraud. Under South Dakota law, the elements of fraud are:

> That a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage.

*Stabler v. First State Bank of Roscoe*, 865 N.W.2d 466, 477 (S.D. 2015). Federal procedural law requires allegations of fraud or mistake to be pleaded with particularity. Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), the party alleging fraud "must typically identify the who, what, where, when and how of the alleged

16

fraud." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation omitted).

Here, COD alleges that Airtime has represented it is insolvent, or at least unable to satisfy the judgment. *See, e.g.*, Docket 100-1 ¶ 35. COD alleges the representation was untrue and known to be untrue in so far as Airtime chose to be insolvent and remain undercapitalized in order to avoid satisfying the state court judgment. *Id.* ¶¶ 37-41, 73. Under the proposed Second Amended Complaint, it can be inferred that the representation was made with the intent to deceive COD with the hope that COD would rely on that representation and be unable to recover the money owed. *See id.* ¶¶ 3, 50-52. This representation of insolvency resulted in damage to COD—as to both the value of the judgment and the damages incurred in enforcing it. *Id.* ¶¶ 2-4. Thus, the facts viewed in the light most favorable to COD state a claim of fraud.

The Brennan defendants argue that COD's fraud claim is insufficiently pleaded under Rule 9(b). Docket 104 at 8-9. The Brennan defendants identify the proper elements but dismiss the claim out of hand without looking at each individual element and the facts as pleaded. *See id.* And they fail to appreciate that the standard under a futility analysis is different than adjudicating fraud at the trial or summary judgment stage. *Id.* at 9. The Brennan defendants also claim that COD "cannot rely upon its 'fraudulent transfer' allegation to support a fraud claim, because the term 'fraudulent transfer' means something other than the tort of 'fraud.'" *Id.* at 8. But while the requirements of SDCL § 54-8A-4 are distinguishable from the elements of common law fraud, the cases they

17

cite do not stand for the proposition that the same set of operative facts cannot establish both claims. *See Elliott v. Glushon*, 390 F.2d 514, 517 (9th Cir. 1967); *Brown v. Nova Information Sys., Inc.*, 903 So.2d 968, 969 (Fla. Dist. Ct. App. 2005); *Carter-Jones Lumber Co. v. Denune*, 725 N.E.2d 330, 333 (Ohio Ct. App. 1999). Thus, the Brennan defendants' sweeping dismissal of COD's fraud claim is without merit.

The Brennan defendants have failed to establish that COD's fraud claim is futile. At the motion to amend stage, COD has plausibly stated a claim of fraud on which relief could be granted. Thus, the motion to amend is granted as to COD's fraud claim.

### c. Violation of SDCL § 54-8-22

COD also pleaded a claim for relief under SDCL § 54-8-22. South Dakota allows the violation of a statute to establish a cause of action under certain circumstances:

> The violation of a statute or ordinance, designed for the benefit of individuals, is of itself sufficient to prove such a breach of duty as will sustain an action for negligence brought by a person within the protected class if other elements of negligence concur. The statute or ordinance becomes the standard of care or the rule of the ordinarily careful and prudent person.

*Hendrix v. Schulte*, 736 N.W.2d 845, 849 (S.D. 2007) (citations omitted). While negligence per se typically arises in the context of a safety statute, the Restatement of Torts § 286 invites its application under other circumstances:

> The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if:
> (a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and

18

(b) the interest invaded is one which the enactment is intended to protect; and

(c) where the enactment is intended to protect an interest from a particular hazard, the invasion of the interests results from that hazard; and,

(d) the violation is a legal cause of the invasion, and the other has not so conducted himself as to disable himself from maintaining an action.

Restatement (First) of Torts § 286 (Am. L. Inst. 1934); *see also Albers v. Ottenbacher*, 116 N.W.2d 529, 531 (S.D. 1962) (citing § 286 in support of South Dakota's negligence per se standard). This court in *Appley Brothers v. United States* analyzed a violation of a federal agricultural regulation as a negligence per se claim. There, the court  determined that negligence per se did not apply because state law, not federal law, must supply the duty in negligence per se, not because a safety statute was not involved. 924 F. Supp. 944, 961 (D.S.D. 1996).

Here, COD alleges that SDCL § 54-8-22 creates a cause of action. In negligence per se, the statute establishes the duty and violation of the statute establishes the breach. *Hendrix*, 736 N.W.2d at 849. Section 54-8-22 states:

Every person who, being a party to any conveyance or assignment of any property, or of any interest therein, made or created with intent to defraud prior or subsequent purchasers, or to delay or defraud creditors or other persons, and every person being privy to or knowing of such conveyance, assignment, or charge, who intentionally puts the same in use as having been made in good faith, is guilty of a Class 6 felony.

Using the standard in *Hendrix*, this statute is clearly designed for the benefit of creditors. And analyzed under the Restatement § 286, the statute appears to protect against a creditor's interest in payment free from fraud or delay caused

19

by the intentional acts of others. COD, as a creditor, claims that the defendants, through intentional acts, invaded its interest in timely and full satisfaction of the state court judgment. Thus, COD has adequately pleaded that SDCL § 54-8-22 establishes a duty. The complaint also states that defendants breached this duty by taking part in and knowing about conveyances and assignments of assets to defraud COD of its interest in the state court judgment. Thus, the proposed Second Amended Complaint adequately pleads a breach of the duty.

While the violated statute provides the requisite duty and breach, a negligence per se claim must still include causation and damages. *Stensland v. Harding Cnty.*, 872 N.W.2d 92, 96 (S.D. 2015). The facts as pleaded in the proposed Second Amended Complaint allow the court to draw the inference that COD's damage is the balance of the state court judgment, and defendants proximately caused that damage by acting to divert property and assets in a fraudulent manner. Docket 100-1 ¶¶ 25-26, 62-63. Thus, COD has stated a claim for violation of SDCL § 54-8-22, and the motion to amend is granted as to this claim.

## 2. Civil Conspiracy

The proposed Second Amended Complaint adds civil conspiracy as a cause of action. Docket 100-1 at 12. "A civil conspiracy is, fundamentally, an agreement to commit a tort." *Kirlin v. Halverson*, 758 N.W.2d 436, 455 (S.D. 2008) (citation omitted). Civil conspiracy, under South Dakota law, consists of "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the

20

minds on the object or course of action to be taken; (4) the commission of one

or more unlawful overt acts; and (5) damages as the proximate result of the

conspiracy." *Huether v. Mihm Transp. Co.*, 857 N.W.2d 854, 861 (S.D. 2014)

(citation omitted). A claim for civil conspiracy "is not an independent cause of

action, but it is sustainable only after an underlying tort claim has been

established." *Kirlin*, 758 N.W.2d at 455 (citation omitted). "The purpose of a

civil conspiracy claim is to impose civil liability for damages on those who agree

to join in a tortfeasor's conduct and, thereby, become liable for the ensuing

damage, simply by virtue of their agreement to engage in the wrongdoing."

*Huether*, 857 N.W.2d at 861 (quoting *Selle v. Tozser*, 786 N.W.2d 748, 756

(S.D. 2010)).

The Eighth Circuit has stated, "as a matter of law a parent corporation

and its wholly owned subsidiaries are legally incapable of forming a conspiracy

with one another." *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 898 (8th Cir.

1999). There, the Court relied on the Supreme Court's reasoning in *Copperweld

Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984). In *Copperweld*, the

Court found that a conspiracy requires entities who previously pursued their

own interests to combine and act for a common benefit, whereas a parent and

its wholly owned subsidiary typically have "complete unity of interest." *Id.* at

771; *see also Burke v. Ability Ins. Co.*, 926 F. Supp. 2d 1056, 1067 (D.S.D.

2013). Here, the proposed Second Amended Complaint states that Badlands

Airtime LLC is a subsidiary of Business Sixteen LLC. Thus, these defendants

could not be found to form a conspiracy together. But this does not foreclose

21

that either independently could have formed a civil conspiracy with others, including other defendants in this lawsuit.

COD's claims of fraud and violation of SDCL § 54-8-22 establish the predicate torts for a civil conspiracy. The proposed Second Amended Complaint states that Brennan and the Sears Family Trust made fraudulent transfers in violation of SDCL § 54-8-22 that resulted in depriving COD of money owed on its state court judgment. Docket 100-1 ¶¶ 31-34. The complaint also alleges that Brennan and the other defendants acted in concert with each other to misrepresent that Airtime and Business Sixteen were made to be either actually or constructively insolvent in order to deprive COD of money owed. *See* Docket 100-1 ¶¶ 50, 57, 73. And a reasonable inference could be drawn that there was a meeting of the minds among defendants to accomplish the objective of harm to COD. Thus, COD has stated a claim for civil conspiracy, and the motion to amend is granted on this claim.

### 3. Entity Abuses by Brennan and Business Sixteen

This court's order on January 29, 2020, recognized the viability of COD's entity abuse claim against Brennan. Docket 52 at 17-22. The court found that "the amended complaint plausibly states a claim for entity abuses and to pierce the corporate veil under South Dakota law. COD's amended complaint provides specific facts supporting a reasonable inference that neither Badlands Airtime *or Business Sixteen* observed the legal requirements of corporate law[.]" *Id.* at 19 (emphasis added). The court also found that Brennan had plausibly engaged in entity abuses. *Id.* While the Amended Complaint less explicitly

22

included Business Sixteen as a perpetrator of entity abuse, the court still found that COD has plausibly stated a claim to that effect.

Under the proposed Second Amended Complaint, Business Sixteen is added in three places alongside Brennan as a perpetrator of entity abuses warranting piercing the corporate veil. The additional factual material in the Second Amended Complaint only supplements this court's analysis in its January 2020 order. Business Sixteen, as an alter ego of Airtime, fraudulently diverted funds away from Airtime in order to avoid satisfying the state court judgment. Docket 100-1 ¶ 57. And Business Sixteen's undercapitalization and use of the entity to engage in fraud are factors that plausibly state a claim to pierce the corporate veil. Docket 52 at 19; *see, e.g.*, Docket 100-1 ¶ 30, 74. The court finds that the amendments to the entity abuses cause of action do not alter the court's analysis in its earlier order. *See* Docket 52 at 17-22. Thus, the entity abuse claim continues to be viable against both Brennan and Business Sixteen.

### 4. Fraudulent Transfer Allegations Against Business Sixteen

The proposed Second Amended Complaint alleges that proceeds from the sale of Badlands Motor Speedway accrued to Business Sixteen LLC, and that Business Sixteen then used these funds for purposes other than paying the judgment owed to COD by Business Sixteen's wholly owned subsidiary, Badlands Airtime LLC. Docket 100-1 at 11. COD alleges that those transfers, among others enumerated, violate SDCL ch. 54-8 and 54-8A. *Id.*

Federal procedural law requires allegations of fraud or mistake to be pleaded with particularity. Fed. R. Civ. P. 9(b). This district has found that Rule 9(b) applies to intentional fraudulent transfer claims. *See Larson Mfg. Co. of S.D., Inc. v. Conn. Greenstar, Inc.*, 929 F. Supp. 2d 924, 934-36 (D.S.D. 2013) (outlining pleading requirements for claims brought under the Uniform Fraudulent Transfer Act). To satisfy Rule 9(b), the party alleging fraud "must typically identify the who, what, where, when and how of the alleged fraud." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation omitted).

"South Dakota has adopted the Uniform Fraudulent Transfer Act." *Nielsen v. Logs Unlimited, Inc.*, 839 N.W.2d 378, 381 (S.D. 2013) (citation omitted). Codified at SDCL § 54-8A, the purpose of the legislation "is to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." *Glimcher Supermall Venture, LLC v. Coleman Co.*, 739 N.W.2d 815, 820 (S.D. 2007) (citation omitted). A fraudulent transfer is a transfer made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" SDCL § 54-8A-4(a)(1). Certain "badges" of a fraudulent transfer are identified in the statute, including whether the alleged fraudulent transfer occurred "shortly before or shortly after a substantial debt was incurred," whether "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred," "the transfer was of substantially all the debtor's assets," the transfer was of "substantially all of the debtor's assets," "the debtor transferred the essential assets of the business to a lienor who transferred the

24

assets to an insider of the debtor;" the transfer "was disclosed or concealed;" and whether the debtor had been sued before the transfer was made. SDCL § 54-8A-4(b).

Under South Dakota's Fraudulent Transfers Act, "debtor" is defined as "any [individual, LLC, or other legal or commercial entity] who is liable on a claim." SDCL § 54-8A-1(6), (9). Claim is defined as "any right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" SDCL § 54-8A-1(3). Section 10 notes that "[u]nless displaced by the provisions of this chapter, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplements its provisions."

The Brennan defendants argue that Business Sixteen's transfers identified in paragraph 57(f)-(g) of the proposed Second Amended Complaint cannot be considered fraudulent transfers under South Dakota's version of the UFTA. Docket 104 at 12. Business Sixteen is not a "debtor," they argue, and only transfers by "debtors" can be fraudulent under the law. *Id.* In a similar vein, the Brennan defendants note that "[Business] Sixteen has been a party only in the most technical and limited sense," and "the Amended Complaint does not allege [Business] Sixteen is the recipient (or maker for that matter) of any fraudulent transfers." *Id.*

25

These arguments ignore the court's analysis regarding entity abuse in its order dated January 29, 2020. Docket 52 at 17-22. There, the court determined that, at the motion to amend stage, COD had plausibly stated a claim to pierce Airtime's corporate veil to reach Business Sixteen and Brennan. *Id.* at 20-22. The court found that Business Sixteen and Brennan were alleged to have abused the limited liability company format such that Airtime was a mere instrumentality or alter ego of them. *Id.* Thus, if proven at trial, after piercing the corporate veil, Airtime would no longer be entitled to be viewed as a separate entity.

Piercing the corporate veil to reach a person or parent entity is an equitable remedy under South Dakota law. *See Kansas Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 117 (S.D. 1994). And SDCL § 54-8A-10 provides that principles of equity will supplement the provisions of chapter 54-8A. The facts as pleaded here allow the court to draw the reasonable inference that Business Sixteen, as an alter ego of Airtime, can plausibly be a "debtor" of COD. And even if not viewed as an alter ego, a parent entity can still be liable if "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management and the parent is directly a participant in the wrong complained of." *Venture Commc'ns Coop., Inc. v. James Valley Coop. Tel. Co.*, --- F. Supp. 3d ---, 2020 WL 5878216, at *4 (D.S.D. 2020) (quoting *United States v. Bestfoods*, 524 U.S. 51, 64-65 (1998)).

Because Business Sixteen can plausibly be a debtor of COD, the court must analyze the facts as pleaded to determine if the proposed Second

Amended Complaint alleges any fraudulent transfers on the part of Business Sixteen. COD avers generally that "Business Sixteen [used its] income and assets for purposes other than payment of obligations of Badlands Airtime, LLC owed to COD." Docket 100-1 ¶ 57(f). More specifically, COD states that Business Sixteen received approximately $5,000,000 in July 2020, but then it used those funds for purposes other than paying the debt of Badlands Airtime. *Id.* ¶ 57(g). Except for this $5 million windfall that was then allegedly diverted, Business Sixteen was insolvent since its inception. *Id.* ¶ 30.

Here, several badges of fraudulent transfer are present. *See Glimcher Supermall Venture, LLC v. Coleman Co.*, 739 N.W.2d 815, 821 (S.D. 2007). First, Business Sixteen had already been sued in this lawsuit when it made the allegedly fraudulent transfer involving speedway funds. Notably, Business Sixteen was named a defendant in the Amended Complaint filed in January 2020 that stated that all "defendants . . . are affiliates and/or insiders as to Badlands Airtime LLC" and "COD is entitled to recover from all Defendants the amount or amounts of such fraudulent transfers." Docket 53 at 10. While the claim is still disputed, it is a claim nonetheless. See SDCL § 54-8A-1(3). Second, the court can draw the reasonable inference that receipt and then diversion of $5,000,000 by an otherwise insolvent entity constitutes the transfer of substantially all the debtor's assets. Third, the complaint plausibly states that Business Sixteen was insolvent when or shortly after it made the transfers pleaded by COD. Thus, as a debtor alleged to bear several "badges of fraud," COD has stated a claim that is plausible on its face.

27

The Brennan defendants argue that permitting the amendment would contradict this court's order granting COD's first motion to amend the complaint. Docket 104 at 13. They point to the court's rationale in its previous order stating "[a] claim cannot be advanced in an earlier suit if essential elements and operative facts establishing the claim do not occur until after the finality of the previous litigation." *Id.* Their reliance on this argument in inapposite to the fraudulent transfer claim against Business Sixteen. In this litigation, the pleadings state that the "essential elements and operative facts" of the fraudulent transfer claim against Business Sixteen occurred before this litigation began or in a manner to supplement the pleadings. COD does not need to wait until the end of this case to begin yet another lawsuit against Business Sixteen and others to recover funds that could have then been transferred faster than legal proceedings can adjudicate a judgment against each fraudulent transferor and transferee. The Brennan defendants' objections to including Business Sixteen in the fraudulent transfer claim are mistaken as to the timing of the transfer and Business Sixteen's alleged status as an alter ego of Airtime. Thus, the court grants COD's motion to amend adding more particular references to Business Sixteen under the entity abuse cause of action.

## II. Motions for Judgment on the Pleadings and Motion to Strike Jury Demand

When an amended complaint is filed, the effect is to supersede the original complaint, rendering the original complaint of no legal effect. *Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014). As a

result, a motion to dismiss that is based upon the original complaint is technically moot after an amended complaint is filed, because the original complaint no longer has any legal effect. *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002). A motion for judgment on the pleadings is similarly susceptible to mootness, because a motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c) are reviewed under the same standard. *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018); *see Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 2019 WL 5865630, at *3 (N.D. Iowa June 28, 2019) (holding that an amended complaint moots a motion for judgment on the pleadings directed at the former complaint); *Cea v. Cobb-Vantress, Inc.*, 2019 WL 1607291, at *1 (W.D. Ark. Apr. 15, 2019) ("The effect of filing the Amended Complaint was that the motion for judgment on the pleadings as to the original complaint was moot."); *Desert Orchid Partners, L.L.C. v Transaction Sys. Architects, Inc.*, 2006 WL 1401679, at *2 (D. Neb. May 17, 2006).

In cases where the allegations in the new complaint are substantially similar to the mooted complaint, the court has the discretion to consider a pending motion as being made against the replacement pleading and to decide the motion accordingly. *Cartier v. Wells Fargo Nat. Bank, N.A.*, 547 Fed. Appx. 800, 804 (8th Cir. 2013) (unpublished); *see also* 6C Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1476 (3d ed. 2020) ("If some of the defects raised in the original motion remain in the new pleading, the court

29

simply *may* consider the motion as being addressed to the amended pleading.") (emphasis added).

Pending before the court are four motions filed by the Brennan defendants directed at the Amended Complaint: Motion to Strike Jury Demand (Docket 61), Motion for Judgment on the Pleadings Regarding Plaintiff's Claim for Damages (Docket 62), Motion for Judgment on the Pleadings Regarding (1) Plaintiff's Claim That The Defendants Conspired to Fraudulently Transfer Assets; And (2) Plaintiff's Claim That Any Non-Transferee Should Be Liable Regarding Any Allegedly Fraudulent Transfer (Docket 63), and Motion for Judgment on the Pleadings Regarding Certain Claims in Count 1 of the Amended Complaint (Docket 64). The Second Amended Complaint includes new factual allegations, substantially adds to the forms of relief sought, and expands the list of already-named defendants from which relief is sought. The Second Amended Complaint changes the landscape of this case such that it would not serve the parties or the interests of justice for the court to try to address motions that were filed and briefed under a complaint that is now substantially altered and expanded. Thus, the court declines to exercise its discretion to address the pending motions for judgment on the pleadings and motion to strike jury demand. The motions (Dockets 61, 62, 63, 64) are denied as moot and without prejudice.

### III. Motions for Protective Order

The Brennan defendants move for entry of a protective order (Docket 78-14) and certify that the parties, after good faith efforts to resolve the dispute,

are unable to agree on the terms of a protective order. Docket 74. The issue
was fully briefed by the relevant parties. Dockets 75, 80, 94. In COD's response
(Docket 80) to the Brennan defendants' motion, and in its own motion for
protective order (Docket 83), COD proposed its own protective order. Dockets
80-1, 83-4.

### A. Legal Standard

"A party or any person from whom discovery is sought may move for a
protective order in the court where the action is pending . . . ." Fed. R. Civ. P.
26(c)(1). "The court may, for good cause, issue an order to protect a party or
person from annoyance, embarrassment, oppression, or undue burden or
expense[.]" *Id.* "The burden is [on] the movant to show the necessity of [the
protective order's] issuance, which contemplates 'a particular and specific
demonstration of fact, as distinguished from stereotyped and conclusory
statements[.]' " *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th
Cir. 1973) (quoting 8A Charles Alan Wright et al., Federal Practice and
Procedure: Civil § 2035 (3d ed. 2016)).

This court in *Burke v. Ability Insurance Co.* looked to the Third Circuit's
articulation of the good cause standard to issue a protective order: "Good cause
is established on a showing that disclosure will work a clearly defined and
serious injury to the party seeking closure. The injury must be shown with
specificity. Broad allegations of harm, unsubstantiated by specific examples or
articulated reasoning, do not support a good cause showing." No. 12-CV-4051-

KES, 2013 WL 842512, *1 (D.S.D. Mar. 6, 2013) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

In *Pansy v. Borough of Stroudsburg*, the court addressed the "balancing between public and private concerns" in crafting a protective order. *Pansy*, 23 F.3d at 786. The court stated,

> In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process. . . . [T]he court . . . must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result.
>
> Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should be disclosed only in a designated way, as authorized by the last clause of Rule 26(c)(7) . . . . Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public.

*Id.* at 787 (internal citations and quotation marks omitted).

### B. Protective Order Regarding Confidentiality and Attorneys' Eyes Only

The court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). This includes degrees of protection differentiating material as confidential or "for attorneys' eyes only" (AEO). The court in *Ragland v. Blue Cross Blue Shield of North Dakota* discussed the proper application of AEO:

While limiting disclosure on an "attorneys' eyes only" basis is recognized as an appropriate method of protecting information in very limited situations, e.g. cases involving trade secrets, *e.g., In re City of New York*, 607 F.3d 923, 935-36 (2d Cir. 2010) (attorneys' eyes only" disclosure is a "routine feature of civil litigation involving trade secrets"), it is a drastic remedy given its impact on the party entitled to the information. For one thing, it limits the ability of the receiving party to view the relevant evidence, fully discuss it with counsel, and make intelligent litigation decisions. *E.g., Dorchen/Martin Assoc., Inc. v. Brook of Cheboygan*, 2012 WL 1936415, at *1 (E.D. Mich. May 29, 2012). Also, in many cases, it limits the ability of a party to provide needed assistance to counsel. *E.g., MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500-02 (D. Kan. 2007); *Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691, at *2-4 (W.D. Tenn. Jan. 30, 2002); *Frees, Inc. v. McMillian*, 2007 WL 184889, at *5 (W.D. La. Jan. 22, 2007).

For these reasons, any designation of material as "attorneys' eyes only" should be reserved for only those rare instances in which it is truly justified, i.e, when there is a real expectation and entitlement to confidentiality under the law that has been preserved and not waived and there is no other effective alternative. *Burris v. Versa Products, Inc.*, 2013 WL 608742, at *2 (D. Minn. Feb. 19, 2013) (strict criteria for "attorneys' eyes only" disclosure not met); *EQ Oklahoma, Inc. v. A Clean Environment Co.*, 2012 WL 5429869, at *2 (N.D. Okla. Nov. 7, 2012) (same); *Scentsy, Inc. v. B.R. Chase, L.L.C.*, 2012 WL 4523112, at *4-6 (D. Idaho Oct. 2, 2012) (same); *Brandt Industries, Ltd. V. Pitonyak Machinery Corp.*, 2012 WL 3704956, at **2-3 (S.D. Ind. Aug. 27, 2012) (same). In other words, it should not be authorized simply because one of the parties would prefer that certain information not be disclosed to an opposing party. *See id.*

2013 WL 3776495, at *1-2 (D.N.D. June 25, 2013).

In *Ragland*, the court did not approve the inclusion of an AEO designation in the protective order because the movant had failed to identify specific information that would meet the "very strict criteria" for AEO protection. *Id.* at *2. And the court noted that the added layer of AEO designation would likely result in more disputes between the parties that would need to be resolved by the court. *Id.*

This court has previously approved protective orders implementing a two-tiered confidentiality system distinguishing between "confidential" and "AEO" designations. *See, e.g.*, *Sterling Computs. Corp. v. Julie Haskell*, No. 4:17-CV-04073-KES (D.S.D.); *Luverne Truck Equip., Inc. v. Worldwide Equip., Inc.*, No. 4:15-CV-04115-KES (D.S.D.); *LUCID Mfg., Inc. v. LUCID, LLC et al.*, No. 4:15-CV-04122-KES (D.S.D.). But in those cases, the protective orders were stipulated to between the parties and the movant was not met with resistance. *See also Ragland*, 2013 WL 3776495, at *2 n.1. Here, the parties dispute whether AEO is appropriate, and if so, the scope of an AEO designation. Regardless of how the parties characterize their prior communication regarding this dispute, and how they describe prior agreements or lack thereof, they are clearly at an impasse as to the inclusion and scope of an AEO designation.

The Brennan defendants, as the moving party, bear the burden of establishing good cause to include AEO designation in the protective order. The Brennan defendants assert that AEO designation is necessary to protect the privacy of non-parties. Docket 75 at 9. They argue that these non-party "entities and individuals . . . should not be forced to have their loans, investments, or other private financial information made public or provided to Dirt without a higher level of protection" than confidential designation. *Id.* They contend that "the circumstances and the cast of characters have changed significantly in the past [four and a half] hears [sic] since the state court order was entered." Docket 78-11 at 5. As to the cast of characters, defendants point to the expanded scope of involved non-parties. And as to changed

circumstances, they allege that COD violated the existing state court protective order early in the discovery process in this litigation. Docket 75 at 5.

The Brennan defendants have not articulated a specific harm that requires AEO as opposed to simply confidential designation. In other words, they have not established why this is a rare instance where AEO is the only available form of protection and no alternative exists. They have not established that any legitimate business competition or trade secret exists to warrant AEO designation. Thus, the Brennan defendants' Motion for Protective Order (Docket 74) is denied.

Both parties continue to be bound by the protective order in the state court action. Docket 75 at 4. And the proposed protective orders submitted by both parties include "confidential" designation. Docket 78-14, Docket 80-1. In fact, both proposed orders are substantially similar, with the exception of the added AEO provisions in the Brennan defendants' proposed order. Thus, plaintiff's motion for protective order and other relief (Docket 83) is granted as to the protective order regarding confidential designation. The court orders that the parties adopt and file the protective order proposed by COD (Docket 80-1).

The Brennan defendants seek an award of attorneys' fees for costs incurred in bringing this motion for a protective order. Docket 74 at 1. But a court will not order payment of attorneys' fees if the party opposing the motion for protective order was substantially justified in its position. Fed. R. Civ. P. 37(a)(5). Here, there was an honest dispute over whether good cause existed to

seek a heightened level of confidentiality. Thus, no attorneys' fees are awarded as to the Brennan defendants' Motion for Protective Order (Docket 74).

### C. COD's Motion for Protective Order – Other Relief Sought

In addition to seeking a protective order regarding confidentiality, COD's Motion for Protective Order (Docket 83) also seeks additional relief from the court: clarifying that the discovery limits in the scheduling order apply jointly to the "Brennan defendants" and extending the deadlines in the current scheduling order. Docket 83 at 5. The Brennan defendants have no objection to these requests. Docket 95 at 10-11. Thus, the court orders that the discovery limits in the court's scheduling order, and any future scheduling order, apply jointly to the Brennan defendants. A new scheduling order extending deadlines will be entered following the defendants' answer to the forthcoming Second Amended Complaint and a subsequent Rule 26(f) discovery report filed by the parties.

In its motion for a protective order, COD also seeks an amendment to the scheduling order limiting the number of Requests for Admission (RFAs) to 25. Docket 83 at 5. But the Federal Rules do not limit the number of RFAs and neither does the parties' jointly filed discovery report. *See* Docket 59. COD cites some authority for limiting the number of RFAs, but there is no accompanying argument indicating what makes 144 RFAs facially excessive or what number would be reasonable under the circumstances of this case. Although the court may limit the number of RFAs under Rule 26(b)(2)(A), it is not persuaded to impose a limit at this time. COD was justified in seeking a protective order as

to the number of RFAs, but COD has not established good cause. Thus, the

court denies COD's motion for a protective order as to the number of RFAs and

grants the Brennan defendant's motion to compel answers to the First Set of

RFAs. COD is ordered to answer within 30 days in compliance with Federal

Rule of Civil Procedure 36.

## IV. Motions to Compel

### A. Legal Standard

Federal Rule of Civil Procedure 26, which governs the scope of discovery,

provides:

> Unless otherwise limited by court order . . . [p]arties may obtain
> discovery regarding any nonprivileged matter that is relevant to any
> party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery
> in resolving the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit. Information within
> this scope of discovery need not be admissible in evidence to be
> discoverable.

Fed. R. Civ. P. 26(b)(1). The scope of discovery under Rule 26 is extremely broad.

*See* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure

§ 2007 (3d ed. 1970). The reason for the broad scope of discovery is that

"[m]utual knowledge of all the relevant facts gathered by both parties is essential

to proper litigation. To that end, either party may compel the other to disgorge

whatever facts he has in his possession." *Id.* (quoting *Hickman v. Taylor,* 329

U.S. 495, 507-08 (1947)). The federal rules distinguish between discoverability

and admissibility of evidence. Fed. R. Civ. P. 26(b)(1), 32, 33(a)(2). The rules of

evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. *See* Wright & Miller, Federal Practice & Procedure § 2007. But these considerations are not inherent barriers to discovery. *Id.*

Information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. Fed R. Civ. P. 26 advisory committee's note to 2000 Amendments, subdivision b. "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*, 2007 WL 1217919, at *1 (D. Neb. Mar 15, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." *Id.* (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972)).

Once the requesting party has made a thresholding showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive. *Penford Corp. v. Nat'l Union Fire Ins. Co.*, 265 F.R.D.

38

430, 433 (N.D. Iowa 2009); *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive" is insufficient to carry the resting party's burden—that party must make a specific showing of reasons why the relevant discovery should not be had. *Cincinnati Ins. Co. v. Fine Home Mangers, Inc.*, 2010 WL 2990118, at *1 (E.D.Mo. July 27, 2010); *see also Burns v. Imagine Films Ent., Inc.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

**B. Brennan Defendants' Motion to Compel**

Business Sixteen served its First Set of Requests for Admission and First Set of Requests for Production (Docket 78-18) on April 7, 2020. Docket 77 at 2. On May 6, 2020, the day before responses were due, COD served by mail its objections to Business Sixteen's first set of requests for production and first set of requests for admission and motion for protective order. Docket 77 at 2; Docket 78 ¶ 16; Docket 78-12; *see* Fed. R. Civ. P. 34(b)(2)(A) (requiring a response within 30 days). The objections and motion for protective order were not filed with the court until June 4, 2020. Docket 83. COD's objections state:

> The Requests seek documents and information protected by the attorney client privilege and work product doctrine.
> The Requests are overbroad, unduly burdensome, substantially repetitive, oppressive and intended to harass rather than lead to discovery of evidence relevant to issues in dispute in this action. The sheer volume of the Requests for Admission—many of which Defendants know or should know to be irrelevant on their face or untrue on their face—is evidence of the overriding spirit and intent behind the Requests.

Docket 83 ¶¶ 2-3. The remainder of the document details the parties' dispute regarding an agreeable protective order. *See id.* ¶¶ 4-16. On May 20, 2020, after the deadline to serve its answers and objections, COD served additional responses to the Requests for Production. Docket 90.

### 1. Requests for Production

The Brennan defendants move under Rule 37(a) for an order compelling COD to provide full and complete responses to the 41 requests for production (RFPs) served on COD in the First Set of Requests for Production. Docket 76 at 1. Rule 37(a)(3)(B) permits a party to seek a court order to compel responses to a discovery request if the party "fails to respond that inspection will be permitted—or fails to permit inspection[.]" Under the same rule, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). A response "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

"Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause." *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012). Objections must be stated with specificity and in relation to specific requests. *Kooima v. Zacklift Int'l., Inc.*, 209 F.R.D. 444, 446 (D.S.D. 2002). The Brennan defendants' motion to compel sought "full and complete responses" to the RFPs. Docket 76 at 1. COD initially provided blanket objections to the entirety of the First Set of RFPs

and RFAs. The court finds the boilerplate objections in the initial response and in the opening of the amended responses to be not specific and thus unacceptable. *Kooima*, 209 F.R.D. at 446; *SPV-LS, LLC Transamerica Life Ins. Co. v. Bergman*, No. 14-CV-4092-LLP, 2017 WL 899882, at *9 (D.S.D. Mar. 6, 2017).

COD later served specific responses to each RFP. Docket 83; Docket 90. Presumably, these more particular responses were still inadequate to the Brennan defendants, because they then submitted a supplemental brief based on the new responses instead of withdrawing their motion to compel as to the RFPs. Although untimely, the court will address the more particularized responses.

### a. Requests 2, 3, 5, 6, 8, 9, 10, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35

Under Federal Rule of Civil Procedure 34, "[u]nless otherwise stipulated or ordered by the court . . . [a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request[.]" Several of the Brennan defendants' RFPs are met with the same response from COD:

> See documents previously produced. Because of delay and failure in production of documents by Defendants other than RPR, COD reserves the right to supplement this response as discovery permits.

Docket 90. The Brennan defendants argue that they are entitled to a response to each RFP identifying the documents responsive to each request, even if the responsive document was already produced in response to a different request. Docket 89 at 5. COD provides no counter-argument and relies on its position

41

that discovery has essentially come to a halt over the terms of a protective order. *See* Docket 84.

Where a request is duplicative of discovery already provided to the defendant, the plaintiff "will identify those documents previously provided to the defendant." *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 448 (D. Kan. 2000). A party may identify responsive documents already produced to the requesting party either by bates number or other means that clearly identifies the document. *Mach. Sols., Inc., v. Doosan Infracore Am. Corp.*, 2017 WL 11458382, at *5 (D.S.C. May 26, 2017); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 756631, at *16 (D. Kan. Mar. 8, 2007). Here, the court orders COD to identify the documents already produced that are responsive to RFPs 2, 3, 5, 6, 8, 9, 10, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 within 30 days. COD must identify responsive documents by bates number or by a document name making the document(s) readily identifiable to the Brennan defendants.

### b. Requests 1 & 11

Requests 1 and 11 seeks "all documents or things" relating to specific findings of the jury in the underlying state court action. The requests and their corresponding responses state:

> 1. All Documents or Things supporting the allegation in Paragraph 2 of the Amended Complaint that the jury in the State Court Action was asked to rule whether Airtime breached the COD APA, rather than whether Airtime was fraudulently induced to enter into the COD APA.

42

> RESPONSE: By the jury's ruling, Airtime was determined to have breached the COD APA as determined by Court ruling and agreement of Airtime's counsel. Transcripts and documents from the State Court action bear that out.
>
>  . . .
>
> 11. All Documents or Things evidencing that the jury in the State Court Action found that Airtime breached the COD APA as alleged in Paragraph 22 of the Amended Complaint.
>
> RESPONSE: By the jury's ruling, Airtime was determined to have breached the COD APA as determined by Court ruling and agreement of the Airtime's counsel. Transcripts and documents from the State Court action bear that out.

Docket 90 at 3-4, 7-8. COD seems to generally identify documents responsive to these requests. But unlike the first sets of requests the court addressed *supra*, here COD does not state that the documents have already been produced or are otherwise in the possession of the Brennan defendants. In any case, "[a] requested party may not refuse to respond to a requesting party's discovery request on the ground that the requested information is in the possession of the requesting party." *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003) (citation omitted). Thus, the court orders COD to respond within 30 days and identify any documents responsive to requests 1 and 11 that have already been produced. And to the extent responsive documents have not been produced, the court orders COD to comply with the request by producing responsive documents within 30 days.

### c. Request 4

Request 4 seeks "All Documents or Things evidencing Dirt's entitlement to attorneys' fees as alleged in Paragraph 4 of the Amended Complaint." Docket

90 at 8. In response, COD cites the "Asset Purchase Agreement between COD and Badlands Airtime, LLC" as a document responsive to the request. *Id.* But COD also cites generally to an earlier brief it submitted. *Id.* COD's response falls short of the two basic options of a party facing a RFP: respond by producing documents or respond by objecting. *See* Fed R. Civ. P. 34(b)(2)(B); *see also* 8B Wright & Miller, Federal Practice & Procedure § 2213 n.1 (3d ed. 2020) (including two additional options: not responding at all or moving for a protective order). Thus, the court orders COD to respond within 30 days and identify any documents responsive to request 4 that have already been produced. And to the extent responsive documents have not been produced, the court orders COD to comply with the request by producing responsive documents within 30 days.

### d. Request 14

Request 14 seeks "All Documents or Things evidencing the current fee agreement between Dirt and its counsel regarding this lawsuit, including whether and how counsel are to be paid from the proceeds of any judgment, and whether Dirt's counsel will be paid only if a judgment is obtained in this lawsuit." Docket 90 at 11. COD objects based on relevance and attorney-client privilege. *Id.* First, COD objects "on the ground that it seeks information which is irrelevant and immaterial and not reasonably calculated to lead to admissible evidence[.]" *Id.* COD argues that discovery of its fee arrangement with counsel is premature and only relevant once it makes a claim for attorneys' fees at the conclusion of litigation. Docket 84 at 7.

Here, the Brennan defendants argue that the fee agreement is relevant because the Amended Complaint states that COD seeks to recover attorneys' fees and to discover who is the real party in interest. Docket 95 at 10. To support its position, the Brennan defendants point to persuasive authority from the Northern District of Georgia. *Id.* There, the court found that while information about a party's legal fees "is not ordinarily exchanged during pre-trial discovery," its production may be compelled where attorney's fees are "driving [the] litigation." *Unique Sports Prods., Inc. v. Wilson Sporting Goods Co.*, 512 F. Supp. 2d 1318, 1328 (N.D. Ga. 2007). But in that case, it was the court that concluded attorneys' fees were driving the litigation. *Id.* at 1326-28. Here, the Brennan defendants merely assert that attorneys' fees are driving this litigation because attorneys' fees are part of state court judgment. Docket 95 at 9-10.

In *Banco Del Atlantico, S.A. v. Stauder*, the defendant raised the same arguments as the Brennan defendants to show the relevance of plaintiff's fee agreement with counsel. 2004 WL 7341116, at *1 (S.D. Ind. Aug. 13, 2004). The court found that relevance based only on plaintiff's claim for attorney's fees was premature at the pre-trial stage but could become relevant later if the issue of attorney's fees was before the court post-judgment. *Id.* And the court found that the fee agreement itself was not relevant to discovery of the real party in interest. *Id.*

COD has adequately objected to this request based on relevancy. The Brennan defendants have expressed a desire to discover who is the real party

45

in interest, but they have not articulated why the fee agreement will be relevant to that inquiry. And they have not demonstrated how attorneys' fees are driving this litigation. The court is also persuaded that discovery of a party's fee agreement with counsel is premature at this stage. The Brennan defendants have failed to demonstrate relevance, so the court need not address the attorney-client privilege objection. Thus, the motion to compel is denied as to request 14.

### e. Request 7

The Brennan defendants request "All Documents or Things evidencing that Brennan is the controlling owner of DLC Empire, LLC, as alleged in Paragraph 17 of the Amended Complaint." Docket 90 at 9. In response, COD states:

> Public filings so indicate as the Brennan defendants are well aware. DLC Management is the manager of DLC Empire. The manager of DLC Management is the Brennan Entities, LLC. The manager of the Brennan Entities, LLC is Chuck Brennan. All of this is disclosed by public record and well-known to the Defendants before serving this Request.

*Id.* This response makes factual statements without support. COD must either produce the responsive documents or object. It has done neither, and it wrongfully rests on the assertion that the Brennan defendants already know or have this information. *See Davidson*, 215 F.R.D. at 77. Thus, the court orders COD to respond and identify any documents responsive to Request 7 within 30 days.

46

**f. Requests 12 & 13**

Requests 12 and 13 are similar in that they seek information relating to the parties' state court action. COD objects that neither request is relevant to this case. The requests state:

> 12. All Documents or Things evidencing how much of the funds Dirt received from the escrow payments referenced in Paragraphs 23 and 25 of the Amended Complaint have been paid to Dirt, and how much of those funds have been paid to Dirt's attorneys.
> RESPONSE: COD objects to this Request on the ground that it seeks information that is irrelevant and immaterial to any issue in this action and is not reasonably calculated to lead to admissible evidence.
> 13. All Documents or Things evidencing how much Dirt's attorneys allege Dirt owes them for their work in the State Court Litigation.
> RESPONSE: Same objection as 12. No such documents or things exist. The Brennan Defendants and their counsel are well aware of the amount of the State Court Judgment in favor of COD and its components.

Docket 90 at 10-11. Here, the amount COD has received from escrow is relevant to ascertaining the unpaid portion of the state court judgment. And any amount received by COD's attorneys is relevant to determine the overall unpaid balance of the state court judgment including attorneys' fees. Thus, the motion to compel is granted as to Request 12. But in Request 13, the Brennan defendants have not demonstrated why the actual amount paid from COD to its attorneys is relevant to any issue in this case. The relevant issue is what Airtime or any other defendant has paid toward the outstanding state court judgment including attorneys' fees. The Brennan defendants have failed to show that Request 13 seeks relevant information. Thus, the motion to compel as to Request 13 is denied.

### g. Requests 36, 39, 40

COD objects to three of the RFPs based on overbreadth under Rule 34:

36. All Documents or Things that comprise, refer to, or relate to communications between Dirt or its counsel and any third party regarding any of the Defendants, any of the allegations of the Amended Complaint, the State Court Action, or the lawsuit generally.
 . . .
39. To the extent not previously produced, all Documents and Things that in any way evidence, refer to, relate to, or support any allegation contained in the Amended Complaint.
 . . .
40. To the extent not previously produced, all Documents and Things that in any way reflect or support the allegations contained in the Amended Complaint that Dirt is entitled to damages, including, but not limited to, the computation of such damages. For each Request for Admission concurrently served for which your response is anything other than an unqualified admission, produce all Documents and Things that support each such response, and for each set of such Documents and Things, identify the Request for Admission to which that set corresponds.

*Id.* at 16-18. COD provides the same response to all three requests:

RESPONSE: COD objects to this Request on the ground that it fails to comply with FRCP 34 regarding required description with reasonably [sic] particularity of each item or category of items to be inspected. See documents already produced. Since none of the defendants other than RPR has produced any documents in this action, COD reserves the right to supplement this answer as discovery permits.

*Id.*

Rule 34 requires that a request for production "must describe with

reasonable particularity each item or category of items to be inspected." Fed. R.

Civ. P. 34(b)(1)(A).

While a document request may be overly broad on its face if it uses an omnibus term such as relating to, pertaining to, or concerning, if the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general

categories of information or documents, the request will not be deemed objectionable on its face.

*Brown Bear v. Cuna Mut. Group*, 266 F.R.D 310, 320 (D.S.D. 2009) (internal quotations omitted) (quoting *U.S. Fire Ins. Co v. Bunge N. Am., Inc.*, 2007 WL 1531846, at *7 (D. Kan. May 25, 2007)).

Here, requests 36 and 39 are overly broad on their face with an "omnibus phrase" that is unaccompanied by a specific type of information or document. The Brennan defendants ask for a general category of documents akin to needing but one RFP in each case: "produce everything that falls under Rule 26." The Brennan defendants have failed to comply with the requirements in Rule 34. Thus, the objection is sustained as to requests 36 and 39, and the Brennan defendant's motion as to these requests is denied.

Request 40 seek information relating to the calculation of damages. This request, while broad at the outset, specifies a category of material to be produced. And information about damages is relevant to both the amount in controversy and the resolution of the issues. *See* Fed. R. Civ. P. 26(b)(1). Thus, COD's objection under Rule 34 is overruled, and the Brennan defendants' motion to compel is granted as to request 40.

### h. Requests 37 & 38

COD objects to the following requests based on the scope of expert discovery under Rule 26:

> 37. For each person who is not a retained expert who Dirt may ask to provide expert opinions or testimony in this case, a copy of: (1) his or her resume or curriculum vitae; (2) all documents, records, memoranda, and other materials received, examined, considered, relied upon, or created by the person in this matter; (3) any

correspondence or communication to or from the person regarding this matter; and (4) the person's notes and final report regarding this matter.

. . .

38. For each person who is a retained expert who Dirt may ask to provide expert opinions or testimony in this case, a copy of: (1) his or her resume or curriculum vitae; (2) all documents, records, memoranda, and other materials received, examined, considered, relied upon, or created by the person in this matter; (3) any correspondence or communication to or from the person regarding this matter; and (4) the person's notes, draft reports, and final report regarding this matter.

Docket 90 at 17. COD provided the same response to both requests:

RESPONSE: COD objects to this Request on the ground that it exceeds permissible discovery regarding experts under FRCP 26, provided that COD will comply with any mutually applicable discovery order of the Court.

*Id.*

Rule 26 provides exhaustive limits on the scope of discovery regarding experts, whether retained or not retained, testifying or not testifying. *See* Fed. R. Civ. P. 26. And the court's scheduling order identifies specific information that must be disclosed as to testifying experts. Docket 60 ¶¶ 6-7. Neither party has briefed this issue. *See* Dockets 76, 77, 84, 89, 95. Of note, Rule 26 "protect[s] drafts of any report or disclosure required under Rule 26(a)," and "protect[s] communications between [a] party's attorney and any witness required to provide a report under Rule 26(a)(2)(B)." Fed. R. Civ. P. 26(b)(4)(B)-(C). The court will not further elucidate the limits of expert discovery under Rule 26. To the extent requests 37 and 38 seek discovery beyond the limits of Rule 26, the COD's objection is sustained and the Brennan defendants' motion is denied.

50

### i. Request 41

In their final RFD, the Brennan defendants request:

41. For each Request for Admission concurrently served for which your response is anything other than an unqualified admission, produce all Documents and Things that support each such response, and for each set of such Documents and Things, identify the Request for Admission to which that set corresponds.

Docket 78-18 at 8. COD provides no response. Docket 90. Under Rule 34(b)(2)(A), the court orders that COD serve a response or objection within 30 days of entry of this order.

### 2. Attorneys' Fees

The Brennan defendants seeks an award of attorneys' fees incurred in bringing this motion to compel. Docket 76 at 2. An award of attorneys' fees is required when a motion compelling discovery is granted. Fed. R. Civ. P. 37(a)(5). But attorneys' fees must not be awarded where the movant filed the motion before a good faith effort to resolve the dispute without court action, the party's lack of response or objection was substantially justified, or "other circumstances make an award of expenses unjust." *Id.* Here, it appears that discovery essentially ground to a halt because the parties could not agree on the confidentiality terms of a protective order. COD's motion for a protective order also sought relief in the form of an order limiting the number of RFAs and an order staying discovery until the protective order issue could be resolved. COD was justified in seeking a stay of discovery and a protective order against certain requests. The impasse in the exchange of discovery brought on by

both COD and the Brennan defendants would make an award of
attorneys' fees unjust under the circumstances. Thus, the Brennan
defendants' motion for attorneys' fees under Rule 37(a)(5) is denied.

### C. COD's Motion to Compel Responses to Plaintiff's Request for Production of Documents

COD moves for an order compelling the Brennan defendants' response to
Plaintiff's Request for Production of Documents to Defendants dated March 13,
2020, and to overrule and strike the objections of the Brennan defendants.
Docket 86.

The Brennan defendants state that they are "not planning to withhold
any non-privileged documents based on its objections." Docket 96 at 4. And
they assert that they "are declining to produce confidential and sensitive
documents . . . unless and until an appropriate protective order is in place." *Id.*
at 5. This is not like the Brennan defendants' motion to compel where COD's
responses and objections did not satisfy the requirements in the Federal Rules
of Civil Procedure. Here, the Brennan defendants state that they will not
withhold requested material on the basis of their objections and concede that
the court's protective order will allow them to proceed with production. *Id.* at 4-
5. In its reply, COD acknowledges that the Brennan defendants' concession
essentially moots COD's motion to compel. Docket 98. Thus, the court grants
COD's motion to compel in part by ordering the Brennan defendants to
respond to COD's requests for production within 30 days of the entry of a
protective order.

COD moves for an award of attorneys' fees for bringing its Motion to Compel. Docket 86 at 2. Here, it was the Brennan defendants who were justified in seeking a protective order before proceeding with discovery. Thus, an award of attorneys' fees would be unjust, and COD's motion for attorneys' fees is denied.

## V. Motion to Seal

COD moves to seal the affidavit of Steven W. Sanford in support of the motion to amend the amended complaint (Docket 100) and an attached exhibit. Docket 102. Had a protective order been entered, the documents' contents may have required that the document remain confidential. *See id.* ¶ 2. The Brennan defendants do not object. Good cause appearing, it is ordered that the motion to seal is granted.

## CONCLUSION

COD's proposed second amendment to the complaint is made with good cause and is not futile. The pending motions for judgment on the pleadings and motion to strike jury demand are rendered moot by entry of the Second Amended Complaint. The parties will be subject to a protective order with confidential designation, but without AEO designation. The motions to compel discovery are granted in part and denied in part, and parties will respond as directed in this order. Thus it is,

ORDERED:

1. COD's motion (Docket 100) to amend the Amended Complaint (Docket 53) is granted in part and denied in part.

2. The Brennan defendants' motions for judgment on the pleadings and to strike COD's jury demand (Dockets 61, 62, 63, 64) are denied without prejudice.

3. The Brennan defendants' motion for entry of a protective order (Docket 74) is denied and COD's motion for entry of a protective order (Docket 83) is granted in part and denied in part.

4. The Brennan defendants' motion to compel discovery (Docket 76) is granted in part and denied in part.

5. COD's motion to compel discovery (Docket 86) is granted in part and denied in part.

6. COD's motion to seal (Docket 102) is granted.

Dated February 22, 2021.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE